UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **FIRST AMERICAN BANKCARD, INC.** | **CIVIL ACTION** |
| **VERSUS** | **NO. 15-638** |
| **SMART BUSINESS TECHNOLOGY, INC., ET AL** | **SECTION "N"(2)**<br>*Flag Section "C"* |

## ORDER AND REASONS

Before the Court is defendant, Powa Technologies, Inc.'s ("Powa's") "Rule 12(b)(2) Motion to Dismiss for Lack of Personal Jurisdiction, Rule 12(f) Motion to Strike, and Rule 12(b)(6) Motion to Dismiss for Failure to State a Claim." Rec. Doc. 43. Plaintiff First American Bankcard, Inc. ("FABI") opposes the motion. Rec. Doc. 52. The Court granted Powa leave to reply to FABI's opposition. Rec. Doc. 57. Upon review of the record, the arguments of the parties, and applicable law, the Court grants Powa's motion to dismiss for lack of personal jurisdiction.

### I. BACKGROUND

This case centers on a failed business relationship between FABI and defendant Smart Business Technology ("SBT"). Rec. Doc. 31 (First-Amended Complaint). FABI alleges that, beginning in 2009, FABI and SBT executed a number of agreements to expand and upgrade FABI's cash access services provided to casinos across the country. *See* Rec. Doc. 31 at 3–4. The business relationship grew through 2012, culminating in a formal agreement meant to "confirm, clarify and expand upon" FABI and SBT's past agreements. *See id.* at 4. FABI alleges SBT never provided the products and services contemplated, with significant delays in the development of the products FABI had hoped to expand and upgrade. *See id* at 5. FABI alleges

1

that SBT's deficient performance persisted until 2014, at which point FABI elected to terminate its relationship with SBT. *See id.* at 6.

FABI further alleges that Powa acquired SBT on or around March 2014. *See id.* FABI alleges that Powa began directing the affairs of SBT and became a "direct participant in the acts and omissions" giving rise to FABI's lawsuit. *See id.* Citing communications between Powa, SBT, and FABI taking place between August and October 2014, FABI alleges Powa and SBT refused to cooperate with FABI as the parties ended their relationship. *See id.* at 6–7. Citing emails from "Powa's former officer, Valerie Chianuri," FABI alleges that at various times "Powa threatened to destroy FABI's business by disabling [SBT's] Work Products before FABI could complete the transition." *Id.* at 7. FABI alleges Powa repeatedly made promises to FABI that it did not fulfill, threatened legal action, and also threatened to cut off SBT's services with short notice. *See id.* at 7–9.

On March 2, 2015, FABI filed a diversity jurisdiction action against SBT, two of SBT's officers, and POWA Technologies Limited, alleging a variety of Louisiana state law claims sounding in breach of contract, tortious interference, fraud, and conversion. *See* Rec. Doc. 1. On August 31, 2015, the Court granted plaintiff's motion to amend the complaint—filed in response to a motion to dismiss by POWA Technologies Limited[1]—which substituted in Powa, the actual purchaser and owner of SBT. *See* Rec. Doc. 31.

On October 5, 2015, SBT and its officers filed a motion to dismiss for failure to state a claim. Rec. Doc. 41.[2] On October 14, 2015, Powa filed the instant motion seeking relief on three

---

[1] According to an affidavit by Powa's Chief Operating Officer, POWA Technologies Limited is the parent company of Powa, which in turn is the actual purchaser and owner of SBT. *See* Rec. Doc. 43-3.

[2] SBT and its officers seek dismissal for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). Though filed on a later date, the Court reaches a decision on Powa's motion to dismiss first, because it involves the threshold issue of personal jurisdiction.

2

grounds. Rec. Doc. 43. First, Powa seeks dismissal on the grounds that the Court lacks personal jurisdiction. *Id.* Second. Powa seeks to "strike allegations of the identity and content of settlement negotiations protected by Rule 408 of the Federal Rules of Evidence pursuant to Rule 12(f)." *Id.* Third, Powa seeks dismissal for failure by FABI to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6).

## II. ARGUMENTS OF THE PARTIES

Because the Court finds that it lacks personal jurisdiction over Powa in this case, thereby mooting the Rule 12(f) and Rule 12(b)(6) issues also raised in Powa's motion, the Court only addresses the arguments of the parties as to personal jurisdiction.

Powa contends that the Court has neither general nor specific personal jurisdiction over Powa in this case. Specifically, Powa asserts that it is a Delaware corporation, with its principal place of business in New York, that is not qualified to do business in Louisiana and that has no subsidiaries incorporated in Louisiana. *See* Rec. Doc. 43-1 at 13. Powa asserts that none of its shareholders, officers, vendors, or customers are located in Louisiana, nor does Powa own, lease, or otherwise have an interest in any property located in Louisiana. *See id.* Furthermore, Powa asserts that it does not bank, advertise, file tax returns, or otherwise pay taxes in Louisiana. *See id.*

Powa argues that its sole link to Louisiana in this case is a series of emails, letters, and phone calls between Powa's in-house counsel, Valerie Chianuri ("Chianuri"),[3] and lawyers for FABI. *See id.* at 14. Classifying the communications as "settlement negotiations protected by

---

[3] The parties dispute whether or not Chianuri was an "officer" of Powa during the time period in question. *See* Rec. Doc. 52 at 18 n.42. SBT alleges in its first-amended complaint that Chianuri was an officer. *See* Rec. Doc. 31. Powa asserts Chianuri is an attorney and was in-house counsel with the title "VP Legal, Americas." *See* Rec. Doc. 43-2. For the purposes of the instant motion, the Court does not find it necessary to resolve the dispute over Chianuri's exact title or position within Powa. The Court does find it reasonable, however, to conclude that Chianuri's role with Powa was legal in nature, regardless of her exact title or position within Powa.

3

FRE 408," Powa contends that the efforts of its in-house counsel to settle the dispute between FABI and its subsidiary SBT do not constitute sufficient minimum contacts between Powa and the forum state of Louisiana. *See id.* (citing *Woodward v. Univ. of Utah*, 776 So. 2d 528, 531–32 (La. App. 3d Cir. 2000)).

In its opposition, FABI emphasizes its allegation that Powa assumed direct control over all of SBT's dealings during the period in dispute and that Powa's alleged conduct in part gives rise to plaintiff's action. *See* Rec. Doc. 52 at 4–5. Plaintiff contends that Chianuri became the point of contact for both Powa and SBT as the parties engaged in complex business dealings and negotiations. *See id.* at 5. FABI contends that many of the communications between Chianuri and FABI's counsel regarded "technical operational issues and timelines for deliverables sought by FABI." *Id.* FABI does not dispute that some communications with Powa related to "alleged past-due accounts owed by FABI"; however, FABI argues that none of the communications between Powa and FABI "were designated as 'confidential' or 'for settlement purposes only,'" nor did the parties ever agree to participate in "any type of protected settlement negotiations." *Id.*

Instead, FABI contends that "Powa spent the better part of four months engaging in complex business dealings and negotiations with a Louisiana-based business," making it subject to Louisiana's long-arm statute. *See id.* at 7–8 (citing, *e.g.*, *Standard Fittings Co. v. Sapage, S.A.*, 625 F.2d 630, 640–41 (5th Cir. 1980)). FABI argues that its communications with Powa constituted "'back and forth' about virtually every aspect of FABI's day-to-day business operations" and that the communications contemplated and actually resulted in Powa, through its subsidiary SBT, providing work products to plaintiff, which was located in Louisiana. *See id.* at 8–10. FABI contends that Powa reasonably knew it was transacting business in Louisiana and

voluntarily reached out to FABI "with the purpose of controlling the ordinary course of business between itself, its subsidiary (SBT) and FABI." *See id.* at 11.

FABI further contends that it has alleged intentional torts against Powa and that Fifth Circuit precedent makes clear that Powa's alleged intentional torts directed at a plaintiff in Louisiana make it subject to a Louisiana court's personal jurisdiction. *See id.* at 11–12 (citing *Lewis v. Fresne*, 252 F.3d 352, 359 (5th Cir. 2001); *Wien Air Alaska Inc. v. Brandt*, 195 F.3d 208, 213 (5th Cir. 1999); *Republican Bus. Credit, LLC v. Greystone & Co. Inc.*, Civ. A. No.13-55335, 2014 WL 122102 (E.D.La. Jan. 10, 2014) (Berrigan, J.)). FABI contends that Powa "induced SBT" to violate SBT's prior agreement with FABI, intentionally deceived FABI during negotiations, and wrongfully withheld property belonging to FABI. *See* Rec. Doc. 52 at 11–14. Finally, FABI argues that Powa has made no argument, nor could it, that personal jurisdiction offends due process. *See id.* at 14. Noting that SBT has consented to personal jurisdiction in this case, Plaintiff contends that requiring Powa to litigate before the Court serves FABI's interest in convenient and effective relief and avoids piecemeal resolution of its claims. *See id.* at 15.

In the alternative, FABI argues that the Court should set a full evidentiary hearing before ruling on the personal jurisdiction issue. *See id.* at 15–16.

Both parties cite to emails, written proposals, and other correspondence between FABI's in-house counsel, Chianuri, and various other lawyers and executives for the parties. *See* Rec. Doc. 43-4–43-13; Rec. Doc. 52-1. Apparently, without disagreeing over the authenticity of the documents, Powa and FABI dispute what the documents show. Powa contends that the documents demonstrate that Chianuri's role in this matter was limited to assisting in the negotiation of a final settlement between FABI and SBT that would "wind down" the business relationship amicably. *See* Rec. Doc. 57 at 2. FABI argues that the documents may show a

5

"discordant business setting," but do not support the conclusion that Powa's involvement in the instant matter was limited to pursuing a settlement of a legal claim. *See* Rec. Doc. 52 at 17–18.

### III. LAW AND ANALYSIS

**A. Personal Jurisdiction**

A federal district court sitting in diversity may exercise personal jurisdiction over a nonresident defendant if (1) the long-arm statute of the forum state confers personal jurisdiction over that defendant; and (2) exercise of such jurisdiction by the forum state is consistent with due process under the United States Constitution. *Latshaw v. Johnson*, 167 F.3d 208, 211 (5th Cir. 1999). Louisiana's long-arm statute "extends personal jurisdiction of courts sitting in Louisiana, including federal courts, to the limits permitted under the due process clause." See LA.REV.STAT. § 13:3201(B); *Guidry v. U.S. Tobacco Co.*, 188 F.3d 619, 624 (5th Cir. 1999).

"The Due Process Clause protects an individual's liberty interest in not being subject to the binding judgment of a forum with which the individual has established no meaningful 'contacts, ties, or relations.'" *Dickson Marine, Inc. v. Panalpina, Inc.*, 179 F.3d 331, 336 (5th Cir. 1999) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985) (citing *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 66 S.Ct. 154 (1945))). Thus, "[t]o comport with due process, defendant's connection with the forum state must be such that he 'should reasonably anticipate being haled into court'" in that state. *Latshaw*, 167 F.3d at 211.

The Fifth Circuit has articulated a three-part test to determine whether the exercise of personal jurisdiction against a non-resident defendant who has not consented to suit in the forum state is consistent with due process: "(1) whether the defendant has minimum contacts with the forum state[ ]; (2) whether the plaintiff's cause of action arises out of or results from the defendant's forum-related contacts; and (3) whether the exercise of personal jurisdiction is fair

6

and reasonable." *Nuovo Pignone SpA v. STORMAN ASIA M/V*, 310 F.3d 374, 378 (5th Cir. 2002). When a nonresident defendant challenges personal jurisdiction, the party seeking to invoke the Court's power bears the burden of proving that jurisdiction exists. *Luv n' Care, Ltd. v. Insta–Mix, Inc.*, 438 F .3d 465, 469 (5th Cir. 2006). A plaintiff is not required to establish jurisdiction by a preponderance of the evidence; a prima facie showing will suffice. *Id.* Uncontroverted allegations in a plaintiff's complaint must be taken as true, and factual disputes are to be resolved in favor of the plaintiff. *Bullion v. Gillespie*, 895 F.2d 213, 217 (5th Cir. 1990). Once a plaintiff establishes a prima facie case, the burden of proof shifts to the defendant to show that the exercise of jurisdiction would offend traditional notices of fair play and substantial justice and, thus, is legally unreasonable. *Id.* at 474.

A nonresident defendant's contacts with the forum state may give rise to either "specific" jurisdiction or "general" jurisdiction. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 n. 8–9 (1984). In other words, "[t]he 'minimum contacts' prong of the [ ] test may be further subdivided into contacts that give rise to 'general' personal jurisdiction and 'specific' personal jurisdiction." *Choice Healthcare, Inc. v. Kaiser Found. Health*, 615 F.3d 364, 368 (5th Cir. 2010).

Specific jurisdiction exists where a plaintiff's cause of action arises from, or is related to, the nonresident defendant's minimum contacts in the forum state. *Helicopteros*, 466 U.S. at 414 n. 8; *Wilson v. Belin*, 20 F.3d 644, 647 (5th Cir. 1994); *see also Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. ___,131 S.Ct. 2846, 2851, 180 L.Ed.2d 796 (2011) ("specific jurisdiction is confined to adjudication of issues deriving from, or connected with, the very controversy that establishes jurisdiction") (internal quotation omitted). In the context of specific jurisdiction, minimum contacts exist where a defendant has purposely directed its

7

activities toward the forum state or purposely availed itself of the privileges of conducting activities there. *Choice Healthcare, Inc.*, 615 F.3d 368. The "purposeful availment" element ensures that a defendant will not be haled into court in a jurisdiction solely as a result of random, fortuitous, or attenuated contacts or the unilateral activity of another person or third party. *Id.* at 369 (citing *Burger King Corp.*, 471 U.S. at 475). A nonresident defendant may have minimum contacts with a forum state where the defendant expressly aims intentionally tortious conduct at the forum state, knowing that the brunt of the injury will be felt by a resident of the forum. *See Calder v. Jones*, 465 U.S. 783, 789–90, 104 S.Ct. 1482 (1984).

General jurisdiction is present where a defendant has "continuous and systematic" contacts with the forum state, such that personal jurisdiction is appropriately exercised as to any action brought against that defendant regardless of the relation, if any, of plaintiff's cause of action to those activities. *Helicopteros*, 466 U.S. at 415; *Choice Healthcare, Inc.*, 615 F.3d at 368. To be "continuous and systematic," however, a defendant's contacts with the forum must be substantial and "of a more extensive quality and nature between the forum state and the defendant than those needed for specific jurisdiction." *Choice Healthcare, Inc.*, 615 F.3d at 368. "[R]andom, fortuitous, or attenuated contacts are not sufficient" to establish general jurisdiction. *Id.* (citing *Johnston v. Multidata Sys. Int'l Corp.*, 523 F.3d 602, 610 (5th Cir. 2008). In the case of foreign corporations, the relevant inquiry for determining if general jurisdiction exists is "whether that corporation's affiliations with the State are so continuous and systematic as to render it essentially at home in the forum State." *Daimler AG v. Bauman*, 567 U.S. ___, 134 S.Ct. 746, 761, 187 L.Ed.2d 624 (2014) (quoting *Goodyear*, 131 S.Ct. at 2851).

**B. Discussion**

The Court cannot exercise either specific or general jurisdiction over Powa in this case. Based upon the allegations in the complaint and the correspondence exhibited by both parties, the Court concludes that Powa's alleged conduct and communications as they relate to FABI can fairly be categorized as settlement-oriented. While clearly acting on behalf of both Powa and SBT, Chianuri entered into contact with FABI at a point when a controversy between FABI and SBT existed and litigation was on the horizon. Indeed, what appears to be the first communication between Chianuri (or anyone associated with Powa) and FABI is an August 5, 2014, email from Chianuri to FABI's counsel in which Chianuri early on references "allegations" made by FABI. *See* Rec. Doc. 52-1 at 6–7. Chianuri's August 5 email does note that "[o]nce immediate concerns are addressed," Powa "expect[s] to hear" from FABI whether or not FABI would like to continue a "relationship between our companies"; however, Chianuri later states that any future relationship would be conditioned on FABI ceasing "all abusive behavior toward [SBT's officers] and all SBT/Powa employees." *See id.* at 7.

Furthermore, shortly after August 5, 2014, FABI's counsel sent Chianuri a letter confirming that it had decided to "wind up" its relationship with SBT and also laying out a proposal for how to do so amicably. *See* Rec. Doc. 43-10. It is true that many of the communications between FABI and Powa's counsel involved discussion about logistical and service issues and that the parties clearly attempted to work out their dispute through piecemeal resolution of disputed issues. These facts do not, however, undermine the broader conclusion that Powa's conduct and contacts with Louisiana were geared towards avoiding the clear threat of litigation faced by one of its recently acquired subsidiaries. Pervasive in the communications between Chianuri and FABI's counsel are references to "allegations," releasing "claims," or

9

reaching a "final resolution." *See, e.g.*, Rec. Docs. 43-5, 43-6, 43-13, & 52-1 at 48. Furthermore, a letter from Chianuri to FABI's counsel notes that FABI's counsel misstated "a number of facts but, as you pointed out, we were not brought here to dispute the merits of the other's position." *See* Rec. Doc. 43-7. Statements like these support the conclusion that the parties understood Chianuri's role to be that of a settlement negotiator. On this record, the Court concludes that Powa's interactions with FABI were settlement-oriented, with Powa interjecting into the dispute between FABI and SBT in an attempt to avoid litigation between its recently acquired subsidiary and FABI.

      The Court acknowledges that there is no binding precedent on whether forum contacts like Powa's in this case are sufficient to establish personal jurisdiction. However, the Fifth Circuit in an unpublished decision, *Aqua-Dyne Inc. v. Les Enterprises Claude Chagnon Inc.*, noted that "courts have hesitated to use unsuccessful settlement discussions as contacts for jurisdictional purposes." *See* 237 F.3d 632 at *6 (5th Cir. 2000) (citing *Digi-Tel Holdings, Inc. v. Proteq Telecom. (PTE), Ltd.*, 89 F.3d 524 (8th Cir. 1996)); *see also Patterson v. Blue Offshore BV*, Civ. A. 13-337, 2014 WL 4676048 n.90 (E.D.La. Sept. 18, 2014) (Brown, J.). That hesitation stems from the policy interest in encouraging dispute resolution without compromising legal position. *See Digi-Tel*, 89 F.3d at 525 ("Giving jurisdictional significance to [settlement] activities may work against public policy by hindering the settlement of claims"); *see also Red Wing Shoe Co., Inc. v. Hockerson-Halberstadt, Inc.*, 148 F.3d 1355, 1361 (Fed. Cir. 1998) (reasoning that supporting public policy favoring settlement serves Due Process interest of efficient resolution of controversies identified in *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 292, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980)).

Without necessarily deciding that Federal Rule of Evidence 408 itself mandates that the Court not consider Powa's settlement-oriented contacts to Louisiana, the Court nonetheless concludes that Powa's settlement-oriented conduct does not sufficiently establish that Powa purposefully availed itself to personal jurisdiction in a Louisiana court. Haling Powa into a Louisiana court solely because it attempted to keep a recently acquired subsidiary out of litigation would cut against the clear public policy favoring dispute resolution and would not be fair and reasonable. Because the record otherwise indicates that Powa has had virtually no other contact with Louisiana, it is not appropriate for the Court to exercise either specific or general jurisdiction in this case.

The Court likewise concludes that it does not have personal jurisdiction over FABI's intentional tort claims against Powa. Acknowledging that an allegation of an intentional tort directed at a plaintiff in the forum state typically is sufficient to confer a court in that forum with personal jurisdiction, the Court nonetheless concludes that the alleged facts and claims in this case do not support the exercise of personal jurisdiction over any of Powa's claims. A review of the pleadings and the correspondence exhibited by the parties makes clear that Powa's alleged intentionally tortious conduct was part of the same settlement-oriented conduct previously discussed. *See* Rec. Doc. 31 at 6–9. The Court is not persuaded that personal jurisdiction can stand on the mere allegation by FABI of an intentional tort occurring during the course of settlement-oriented communications between Powa and FABI. *See Mullins v. TestAmerica, Inc.*, 564 F.3d 386, (5th Cir. 2009) ("effects of an alleged intentional tort are to be assessed as *part* of the analysis of the defendant's relevant contacts with the forum") (quoting *Panda Brandywine Corp. v. Potomac Elec. Power Co.*, 253 F.3d 865, 868–69 (5th Cir. 2001) (per curiam)). Without some indication that Powa's contacts with FABI and Louisiana extended beyond settlement-

oriented communications, the Court does not find it appropriate to exercise personal jurisdiction over any of FABI's claims against Powa. Insofar as FABI's only arguments to the contrary are based solely on these communications, no evidentiary hearing is necessary.

## IV. CONCLUSION

Considering the foregoing,

**IT IS HEREBY ORDERED** that the motion to dismiss filed by defendant Powa Technologies, Inc. is **GRANTED** as to its claim that the Court lacks personal jurisdiction and **DISMISSED AS MOOT** in all other regards. Rec. Doc. 43.

**IT IS FURTHER ORDERED** that all of plaintiff's claims against defendant Powa Technologies, Inc. be and hereby are **DISMISSED WITHOUT PREJUDICE**.

New Orleans, Louisiana, this 21st day of March 2016.

_____
**KURT D. ENGELHARDT**
**UNITED STATES DISTRICT JUDGE**