## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**FIRST AMERICAN BANKCARD, INC.**                    **CIVIL ACTION**

**VERSUS**                                           **NO. 15-638**

**SMART BUSINESS TECHNOLOGY,**                       **SECTION "N"(2)**
**INC., ET AL**                                      *Flag Section "C"*

<u>**ORDER AND REASONS**</u>

Before the Court is Smart Business Technology, Inc. ("SBT"), Serafin Fuente ("Fuente") and Carlos Romero's ("Romero") (SBT, Fuente and Romero are collectively referred to as "Defendants") Motion to Dismiss, brought pursuant to Federal Rule of Civil Procedure 12(b)(6). Rec. Doc. 41. Plaintiff First American Bankcard, Inc. ("Plaintiff" or "FABI") opposes the motion. Rec. Doc. 48. The Court granted Defendants' leave to reply to Plaintiff's opposition. Rec. Doc. 60. Upon review of the record, the arguments of the parties, and applicable law, the Court GRANTS IN PART and DENIES IN PART, with an order for Plaintiff to file an amended and superseding complaint as set forth below.

### I. BACKGROUND

This case centers on a failed business relationship between Plaintiff FABI and Defendant SBT. Rec. Doc. 31 (First-Amended Complaint). Defendants Fuente and Romero are officers of SBT. *Id.* FABI provides cash access services to casinos across the country. *Id.* at 3. FABI alleges that, beginning in 2009, FABI and SBT executed a number of agreements to expand and upgrade FABI's cash access services, such as automatic teller machines (ATMs), and its two flagship products known as FABICash and FABITrack. *Id.* at 3-4. FABICash allows casinos to process cash advance and check cashing transactions and electronically captures signatures allowing casino operators to document and verify credit and debit transactions. *Id.* at 3. FABITrack is

1

designed to allow casino operators to fulfill their reporting obligations to the Internal Revenue Service under The Bank Secrecy Act, 31 U.S.C. § 310. *Id.*

   According to FABI's amended complaint, SBT's President, Fuente, traveled to Louisiana in 2009 in order to meet with FABI's president and discuss the services SBT could offer FABI. *Id.* at 4. Starting in June 2009, several agreements outlining projects to be completed by SBT in exchange for professional service fees from FABI were entered into by the two companies. *Id.*

   The business relationship grew through 2012, culminating in a formal agreement meant to "confirm, clarify and expand upon" FABI and SBT's past agreements. *Id.* However, FABI alleges SBT never provided the products and services contemplated, or those that were provided were of "inferior quality and reliability." *Id.* at 5. Further, FABI contends there were significant delays in the development of the products FABI had hoped to expand and upgrade due to "SBT's lack of care, effort, and skill and lack of knowledge about the gaming industry." *Id.* Specifically, FABI argues several system failures, which occurred over the years from 2010-2014, led to its customers threatening to terminate their contracts with FABI. *Id.* at 6. These failures, FABI contends, were caused by a lack of system-wide redundancy, which FABI accuses Defendants Fuente and Romero of intentionally concealing from FABI. *Id.* FABI alleges that due to the persistence of SBT's deficient performance, FABI elected to terminate its relationship with SBT. *Id.*

   FABI contends that on or around March 2014, SBT was acquired by Powa Technologies, Inc. ("Powa"). *Id.* FABI alleges that Powa began directing the affairs of SBT and became a "direct participant in the acts and omissions" giving rise to FABI's lawsuit. Particularly, FABI cites to various communications that were conducted with FABI by Powa's former Vice President of Legal, Valerie Chianuri, on behalf of Powa and SBT. *Id.*

On March 2, 2015, FABI filed a diversity jurisdiction action against SBT, Fuente and Romero (two of SBT's officers), and POWA Technologies Limited, alleging a variety of Louisiana state law claims sounding in breach of contract, tortious interference, fraud, and conversion. *See* Rec. Doc. 1. On August 31, 2015, the Court granted plaintiff's motion to amend the complaint— filed in response to a motion to dismiss by POWA Technologies Limited—which substituted in Powa, the actual purchaser and owner of SBT. *See* Rec. Doc. 31.

On October 5, 2015, SBT and its officers filed the instant motion to dismiss for failure to state a claim under Fed. R. Civ. Pro. 12(b)(6). Rec. Doc. 41. Plaintiff has responded in opposition. Rec. Doc. 48. Defendants were granted leave to file a reply to Plaintiff's response. Rec. Doc. 60. On October 14, 2015, Powa filed its own motion to dismiss alleging lack of personal jurisdiction, which was granted on March 31, 2016. Rec. Doc. 66.

In their motion, SBT and its officers seek to have five claims dismissed, in whole or part, under Fed. R. Civ. Pro. 12(b)(6), specifically: (1) the Louisiana Uniform Trade Secrets Act ("LUTSA") claim against SBT, Fuente and Romero; (2) the fraudulent concealment claim against SBT, Fuente and Romero; (3) the redhibition claim against SBT; (4) the Louisiana Unfair Trade Practices Act ("LUTPA") against SBT; and (5) the conversion claim against Fuente and Romero. Rec. Doc. 41.

## II. ARGUMENTS OF THE PARTIES

### A. Louisiana Uniform Trade Secrets Act (LUTSA) Claim

Defendants argue that the complaint fails to allege they acquired trade secrets by improper means, and fails to allege that they disclosed and/or used trade secrets. Without these allegations, Defendants contend the claim should be dismissed under Fed. R. Civ. Proc. 12(b)(6). *See* Rec. Doc. 41-3 at 2-6, and Rec. Doc. 60 at 1-2. Plaintiff argues that Defendants improperly withheld

the program, software and data (the "work products") and that in itself is a violation of LUTSA. Further, Plaintiff alleges it is not necessary to allege both improper acquisition *and* disclosure, and that only one is enough. *See* Rec. Doc. 48 at 4-6.

### B. Fraudulent Concealment Claim

Defendants argue that under Louisiana law, there is no cause of action for fraudulent concealment, or in the alternative that Plaintiff failed to allege a fraud claim with particularity regarding any duty to speak or disclose and/or any fiduciary duty owed by Defendants to Plaintiff. *See* Rec. Doc. 41-3 at 6-9. Plaintiff contends that it has already pled its fraudulent concealment claim with particularity, specifically, the exact info withheld (only one dedicated server was utilized to host the work products), dates of omissions (from 2009 until 2014), duty to speak due to a relationship of trust between Defendants and Plaintiff (Defendants held themselves out as experts and FABI would not have access to the same information the defendants did). *See* Rec. Doc. 48 at 6-9. In response, Defendants argue Plaintiff has not alleged that SBT, Fuente or Romero ever made a claim that multiple servers would be used for Plaintiff's products, nor how Defendants concealed this information after making such an alleged assertion. *See* Rec. Doc. 60 at 2-4.

### C. Redhibition Claim

Defendants argue Plaintiff's claim for redhibition should be dismissed for one of three reasons: (1) there is no cause of action for redhibition because the contract at issue was not for the sale of a thing; (2) in the alternative, if there is a valid claim of redhibition, that claim is prescribed; or (3) in the alternative, if there is a valid claim of redhibition, it was waived or is estopped by plaintiff's continued use. *See* Rec. Doc. 41-3 at 9-19.[1] Plaintiff maintains redhibition covers

---

[1] It should be noted that the language quoted by Defendants on pages 9-10 of their memorandum in support of their motion to dismiss as being from a decision by Judge Berrigan is not accurate. The case cited does not contain this quote, and the order cited is actually about service of process and entry of default judgment. *Allstate Ins. Co. v. Riverside Roofing & Constr., Inc.*, 2007 WL 1191785, 2007 U.S. Dist. LEXIS 29368 (E.D. La. 2007). This concerns

contracts for software development and products, prescription has not accrued since Plaintiff did not have knowledge of the causal relationship between the defect and Defendants' "faulty product" or alternatively, prescription was interrupted by repairs and because Defendants had possession until the relationship ended. *See* Rec. Doc. 48 at 9-16. In their response, Defendants reiterate their original arguments. *See* Rec. Doc. 60 at 4-7.

### D. Louisiana Unfair Trade Practices Act (LUTPA) Claim

Defendant SBT argues that Plaintiff's LUTPA claim is merely a rehashing of its breach of contract claim and none of the actions complained of rise to the level of "egregious." Rec. Doc. 41-3 at 19-20. Plaintiff maintains that determinations of what constitutes an "unfair trade practice" are to be made by the courts on a case-by-case basis. *See* Rec. Doc. 48 at 18. In addition, FABI argues it has made detailed allegations of SBT's actions which were intended to punish or harm Plaintiff. *Id.* In response, SBT avers that LUTPA's prohibited practices are "extremely narrow," and unethical actions are not per se a violation of LUTPA. *See* Rec. Doc. 60 at 8.

### E. Conversion Claim

Defendants seek to have only the conversion claims against Fuente and Romero dismissed. *See* Rec. Doc. 41-3 at 21. The basis of Defendants' argument for dismissal is that Fuente and Romero are shielded from liability for corporate debts as officers of the corporation acting within their corporate capacity. *Id.* FABI maintains that since Fuente and Romero personally participated in the alleged act of conversion, they can be held personally liable for the conversion. *See* Rec. Doc. 19-20. Defendants' response reiterates their earlier arguments and emphasizes the state policy for shielding corporate officers from corporate debts. *See* Rec. Doc. 60 at 9-10.

---

the Court. Counsel are urged, at a minimum, to double check for accuracy and applicability in all citations contained in their pleadings.

### III. LAW AND ANALYSIS

A motion to dismiss under Rule 12(b)(6) may be granted when a complaint fails to allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).The well-pleaded factual allegations of the complaint, taken as true, must raise the plaintiff's right to recover above the speculative level. *Twombly*, 550 U.S. at 555-56. Facts from which the court could infer the mere possibility of liability will not suffice. *Ashcroft*, 556 U.S. at 678 (quoting Fed. R. Civ. P. 8(a)(2)). *A fortiori*, a complaint may be dismissed when it appears "beyond a doubt that plaintiff can prove no set of facts" that would entitle him to prevail. *Twombly*, 550 U.S. at 560-61.

On a motion to dismiss, the court must take all well-pleaded factual allegations of the complaint as true and draw all reasonable inferences in favor of the plaintiff. *In re Katrina Canal Breaches Litigation*, 495 F.3d 191, 205 (5th Cir. 2007). Nevertheless, "conclusory allegations and unwarranted deductions of fact are not admitted as true, especially when such conclusions are contradicted by facts disclosed by a document appended to the complaint." *Associated Builders, Inc. v. Alabama Power Company*, 505 F.2d 97, 100 (5th Cir. 1974). However, the Fifth Circuit has stated that motions to dismiss under Federal Rule of Civil Procedure 12(b)(6) are "viewed with disfavor and [are] . . . rarely granted." *Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 232 (5th Cir. 2009).

**A. Louisiana Uniform Trade Secrets Act (LUTSA) Claim**

Under LUTSA, a trade secret is defined as "information, including a formula, pattern, compilation, program, device, method, technique, or process, that:

> (a) derives independent economic value, actual or potential, from not being generally known to and not being readily ascertainable by proper means by other persons who can obtain economic value from its disclosure or use, and
>
> (b) is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

La. R. S. § 51: 1431(4). To succeed on a LUTSA claim for damages from a misappropriation, a claimant must prove (1) the existence of a trade secret; (2) a misappropriation of the trade secret by another; and (3) the actual loss caused by the misappropriation. *Reingold v. Swiftships, Inc.*, 126 F.3d 645, 648 (5th Cir. 1997). Damages are to cover for actual losses and any unjust enrichment caused by the misappropriation that is not taken into account in computing the actual losses. La. R.S. § 51:1433. An action under LUTSA "must be brought within three years after the misappropriation is discovered or by the exercise of reasonable diligence should have been discovered." La. R.S. § 51:1436.

"Misappropriation" is defined in the statute as:

> (a) acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means; or
>
> (b) disclosure or use of a trade secret of another without express or implied consent by a person who:
>
> > (i) used improper means to acquire knowledge of the trade secret; or
> >
> > (ii) at the time of disclosure or use, knew or had reason to know that his knowledge of the trade secret was:
> >
> > > (aa) derived from or through a person who had utilized improper means to acquire it;

(bb)  acquired under circumstances giving rise to a duty to maintain its secrecy or limit its use; or

(cc)  derived from or through a person who owed a duty to the person seeking relief to maintain its secrecy or limit its use; or

(iii)  before a material change of his position, knew or had reason to know that it was a trade secret and that knowledge of it had been acquired by accident or mistake.

La. R.S. § 51:1431(2). Further, the statute defines "improper means" to include: theft, bribery, misrepresentation, breach, or inducement of a breach of a duty to maintain secrecy, or espionage through electronic or other means. La. R.S. § 51:1431(1). However, this is only a partial list of means of acquisition that would be deemed "improper." *Reingold*, 126 F.3d at 648.

The agreement between Plaintiff and SBT states that all "completed computer programs, deliverables, and all other works of authorship developed and created by [SBT] for FABI pursuant to [their prior agreements], belong exclusively to FABI. . ." Rec. Doc. 31-1 at 1-2.[2] Further, SBT was to include "a copyright notice on the first visible screen, and such other screens as may be appropriate or requested by FABI, as well as within the comments to the source code, of all deliverables, indicating FABI ownership of the work product." *Id.* at 2. However, SBT did retain "all right, title and ownership interests in and to the basic underlying algorithms and structures used in the work products and nothing herein shall prevent [SBT] from using its code in other products." *Id.* Further, there is a confidentiality and non-disclosure portion of the agreement, whereby SBT acknowledges it will have access to "certain confidential and proprietary

---

[2] Generally, a motion to dismiss submitted with documents outside of the pleadings converts it to a motion for summary judgment. *Tuley v. Heyd*, 482 F.2d 590, 592 (5th Cir. 1973). Defendants have included as exhibits to their motion the 2012 agreement between the parties and the exhibits that were attached to that agreement. The Court can consider these documents as part of the pleadings without converting the motion to one for summary judgment since Plaintiff originally included the 2012 agreement as an exhibit to its Amended Complaint. Rec. Doc. 31-1. "Documents that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to [the plaintiff's] claim." *Causey v. Sewell Cadillac-Chevrolet, Inc.*, 394 F.3d 285, 288 (5th Cir. 2004), *citing Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5 Cir. 2000).

information and trade secrets of FABI" and agrees to "maintain such information in confidence and not to disclose such information without prior written approval from FABI." *Id.*

Plaintiff has alleged that SBT has continued to refuse to turn over the source code and "the fully-populated configuration tables, customer lists, and financial records" that are Plaintiff's proprietary information. Rec. Doc. 31 at 8. As a result, Plaintiff argues it has incurred expenses to re-create the work products. *Id.* However, Plaintiff has not alleged that Defendants have used the work products in any improper applications nor disclosed the work products to any third parties. *See id.*

Plaintiff's claim rests on the allegation that Defendants have *only* improperly withheld the work products. SBT legitimately acquired the work products through either Plaintiff's conveyance, or developed them for FABI per the written agreement. Without a showing that the Defendants' disseminated or used the work products to gain "some sort of unfair trade advantage", Plaintiff's LUTSA claim fails. *See Omnitech Int'l v. Clorox Co.*, 11 F.3d 1316, 1324-5 (5th Cir. 1994). For these reasons, Defendants' Motion to Dismiss is GRANTED as to Plaintiff's LUTSA claims only.

**B. Fraudulent Concealment Claim**

Fraud under Louisiana law entails a "misrepresentation or suppression of the truth made with the intention to obtain an unjust advantage for one party or to cause a loss or inconvenience to the other." La. Civ. Code art. 1953. The Fifth Circuit has stated the requisite elements of a fraud claim are: "(1) a misstatement or omission; (2) of material fact; (3) made with the intent to defraud; (4) on which the plaintiff relied; and (5) which proximately caused the plaintiff's injury." *Williams v. WMX Techs.*, 112 F.3d 175, 177 (5th Cir. 1997) *citing Cyrak v. Lemon*, 919 F.2d 320 (5th Cir. 1990). Federal Rule of Civil Procedure 9(b) requires that all claims of fraud be pled with particularity, including "time, place, and contents of the false representations, as well as the

identity of the person making the misrepresentation and what he obtained thereby." *Tel-Phonic Services, Inc. v. TBS International, Inc.,* 975 F.2d 1134, 1138 (5th Cir. 1992).

For claims of fraud by silence or omission, there first must be a duty to speak. *Greene v. Gulf Coast* Bank, 593 So.2d 630 (La. 1992). There is no general duty to speak under Louisiana law, but such a duty may exist in a fiduciary relationship. *Id.* at 632. A fiduciary relationship is one where "confidence is reposed on one side and there is resulting superiority and influence on the other." *Plaquemines Parish Comm'n Council v. Delta Development Co., Inc.*, 502 So.2d 1034, 1040 (La. 1987). "The defining characteristic of a fiduciary relationship, therefore, is the special relationship of confidence or trust imposed by one in another who undertakes to act primarily for the benefit of the principal in a particular endeavor." *Id.*

Recently, the Louisiana Supreme Court reiterated that state law "'recognizes that the refusal to speak, in the face of an obligation to do so, is not merely unfair, but is fraudulent.'" *Lomont v. Myer-Bennett*, 172 So. 3d 620, 629 (La. 06/30/15), *quoting Bunge Corp. v. GATX Corp.*, 557 So. 2d 1376, 1383 (La. 1990). Further, in Louisiana, "'[a]lthough a party may keep absolute silence and violate no rule of law or equity . . . if he volunteers to speak and to convey information which may influence the conduct of the other party, he is bound to [disclose] the whole truth.'" *Kadlec Med. Ctr. v. Lakeview Anesthesia Assocs.*, 527 F.3d 412, 419 (5th Cir. La. 2008) *quoting American Guaranty Co. v. Sunset Realty & Planting Co.*, 23 So. 2d 409, 455-56 (La. 1944). The Fifth Circuit has further stated that after reviewing Louisiana cases on the issue, "before a duty to disclose is imposed the defendant must have had a pecuniary interest in the transaction." *Id.* at 420, *citing Barrie v. V.P. Exterminators, Inc.*, 625 So. 2d 1007, 1017 (La. 1993)("Due to V.P.'s pecuniary interest in supplying the information, the duty arose to exercise reasonable care").

Louisiana courts have "tended to impose a duty [to speak] when the circumstances are such that the failure to disclose would violate a standard requiring conformity to what the ordinary ethical person would have disclosed." *Bunge Corp.*, 557 So. 2d 1376, 1384 (La. 1990). Whether this duty exists is a legal question, with relevant factors including: "whether the obligation is being imposed on a seller, who is more likely to be required to disclose; the importance of the fact not disclosed; the relationship of the parties; and the nature of the fact not disclosed." *Id.* Further, "in contracts for sale, if the vendor conceals an intrinsic defect not discoverable by reasonable care, there is a much greater likelihood of the existence of a duty to disclose the non-discoverable and intrinsic defect than there would be to disclose something extrinsic such as a fact likely to affect market value." *Id.* The services SBT offered are somewhat analogous those provided by to craftsmen, artisans and builders, and Louisiana courts have traditionally held builders, craftsmen, artisans and manufacturers to a high standard of accountability for the product of their workmanship. *Id.* at 1384.

However, fraud by omission or silence "'is by its very nature difficult to plead with particularity.' Because it does not involve an affirmative misrepresentation, it often does not occur at a specific place or precise time, or involve specific persons." *Chrysler Credit Corp. v. Whitney Nat'l Bank*, 824 F. Supp. 587, 598 (E.D. La. 1993)(J. Clement), *quoting Daher v. G.D. Searle & Co.*, 695 F. Supp. 436, 440 (D. Minn. 1988). Judge Clement found that at a minimum, a plaintiff alleging fraud by silence must show (1) the information that was withheld, (2) the general time period during which the fraudulent conduct occurred, (3) the relationship giving rise to the duty to speak, and (4) what the person or entity engaged in the fraudulent conduct gained by withholding the information. *Id.*

Plaintiff has alleged the exact information withheld (only one dedicated server was utilized to host the work products instead of two, resulting in a lack of redundancy), and the dates of omissions (from 2009 until 2014). The main deficiency with Plaintiff's claim is its allegation regarding Defendants' duty to speak. Plaintiff asserts that a "relationship of professional trust" between the parties gave rise to the duty to speak. FABI contends it was reasonable to rely on statements and information conveyed by the Defendants because the Defendants held themselves out as experts and FABI would not have had access to the same information as Defendants.

Defendants' motion asks, in the alternative to a dismissal of the claim, for an order requiring Plaintiff to plead the fraudulent concealment claim with particularity. The Court agrees. Plaintiff is thus granted twenty-one days from the issuance of this Order to file an amended complaint to more particularly plead its fraudulent concealment claim, specifically, its factual basis for the argument that Defendants had a duty to disclose. Plaintiff must state facts specific to this claim, rather than reiterating the same facts and allegations as alleged for its breach of contract claim.

For these reasons, Defendants' Motion to Dismiss is DENIED without prejudice as to Plaintiff's fraudulent concealment claim, and Plaintiff is granted leave to amend its complaint.

**C. Redhibition Claim**

Louisiana Civil Code Article 2520 provides for the "avoidance of a sale on account of some vice or defect in the thing sold, which renders it either absolutely useless, or its use so inconvenient and imperfect, that it must be supposed that the buyer would not have purchased it, had he known of the vice." Defects that diminish the thing's usefulness or its value, without rendering it totally useless, are also redhibitory since it must be presumed the buyer would still have bought the thing

but for a lesser price. *Chastant v. Oasys Imaging, Inc.*, 839 So. 2d 1124, 1127 (La.App. 3 Cir. 2002). Furthermore, Louisiana Civil Code Articles 2545 provides that:

> The thing sold must be reasonably fit for its ordinary use.
>
> When the seller has reason to know the particular use the buyer intends for the thing, or the buyer's particular purpose for buying the thing, and that the buyer is relying on the seller's skill or judgment in selecting it, the thing sold must be fit for the buyer's intended use or for his particular purpose.

The threshold issue is whether the agreement between SBT and FABI was a contract of sale or a species of a contract "to do" or "to build." A contract "to build" or "to do" is defined in La. C.C. Arts. 2756 and 2757: "To build by a plot, or to work by the job, is to undertake a building or a work for a certain stipulated price," and "a person who undertakes to make a work, may agree, either to furnish his work and industry alone, or to furnish also the materials necessary for such a work." Courts have considered three major factors in determining whether a contract is one of a sale or one to build or do: "(1) in a contract to build, the 'purchaser' has some control over the specifications of the object; (2) the negotiations in a contract to build take place before the object is constructed; and (3) a building contract contemplates not only that the builder will furnish the materials, but that he will also furnish his skill and labor in order to build the desired object." *Alonzo v. Chifici*, 526 So. 2d 237, 241 (La.App. 5 Cir. 1988), *quoting Acadiana Health Club, Inc. v. Hebert*, 469 So.2d 1186, 1189 (La.App. 3 Cir. 1985). Additionally, Louisiana courts have looked to whether "the labor extended in constructing the item, or the materials incorporated therein, constitute the 'principal value of the contract.'" *Id. quoting Price v. Huey Childs Builder, Inc.*, 426 So. 2d 398 (La.App. 2 Cir. 1983). If the principal value of the contract is the materials, then it is a contract of sale, however, if the principal value is the labor, then it is a contract to build. *Id.*

However, Louisiana courts have routinely found, in the context of software development and computer programming, that the developers are more analogous to manufacturers, and

13

therefore the contracts are for a sale. *See id.* "A seller is deemed to know that the thing he sells has a redhibitory defect when he is a manufacturer of that thing." *Id.* Louisiana courts have found that software developers are "considered to be the manufacturer and are thus presumed to know of any defect." *Id. See also Land & Marine Services, Inc. v. Diablo Data Systems, Inc.*, 471 So. 2d 792 (La.App. 5 Cir. 1985). When SBT obligated itself to provide customized programing and software systems to Plaintiff, "it entered into a contract of sale with plaintiff and such sale was subject to [Louisiana's] laws of redhibition." *Photo Copy, Inc. v. Software, Inc.* 510 So.2d 1337, 1339 (La.App. 3 Cir. 1987). Under these cases, the agreement between FABI and SBT would be categorized as a contract of sale under Louisiana law, rather than a contract to do or build.

The next issue is whether the prescriptive period on the claim has run or whether it was interrupted by Defendants' efforts to repair. The Fifth Circuit has held that "[a] statute of limitations may support dismissal under Rule 12(b)(6) where it is evident from the plaintiff's pleadings that the action is barred and the pleadings fail to raise some basis for tolling or the like." *Jones v. Alcoa, Inc.*, 339 F.3d 359, 366 (5th Cir. 2003). However, where prescription presents questions of fact—such as "reasonableness,"—that are not susceptible to resolution on the face of the pleadings, dismissal under Federal Rule of Civil Procedure 12(b)(6) is improper. *Jamil Abdu-Alim Amin v. Universal Life Ins. Co.*, 706 F.2d 638, 641 (5th Cir. 1983).

Under La. C.C. Art. 2534, the prescriptive period for redhibition claims is: (a) for sellers who did not know of the existence of a defect, either four years from the day of delivery to the buyer or one year from the day the defect was discovered by the buyer, whichever occurs first, or (b) if the seller knew of the defect, or is presumed to have known, one year from the day the defect was discovered by the buyer. The Louisiana Supreme Court has held that "it is not necessary that the party have actual knowledge of the conditions as long as there is 'constructive notice.' Whatever

is notice enough to excite attention and put the owner on his guard and call for inquiry is tantamount to knowledge or notice of everything to which inquiry may lead and such information or knowledge as ought to reasonably put the owner on inquiry is sufficient to start the running of prescription." *Cartwright v. Chrysler Corp.*, 32 So.2d 285, 287 (La. 1970).

Prescription is interrupted when the seller accepts the thing for repairs and commences anew from the day he returns it back to the buyer, or notifies the buyer of his refusal or inability to make the repairs. La. C.C. Art. 2534. Waiver of redhibition occurs when the buyer continues to use the thing with knowledge of the defect and fails to tender it for repair within a reasonable time. *See Granger v. Deville*, 583 So.2d 583, 586 (La.App. 3 Cir. 1991) (holding that a buyer waived redhibition claim for a destroyed engine when the buyer continued to use the vehicle despite knowledge of the defects that caused subsequent damage).

FABI claims the defects with the programs and systems developed by SBT began in 2010. However, the agreement at issue was signed by the parties in 2012, which Defendants claim equates to a waiver of all redhibitory claims. Louisiana Civil Code Article 2522 requires that a buyer must give the seller notice of the defect within a sufficient time to allow the seller the opportunity to make the required repairs. However, this notice is not required when the seller has actual knowledge of the existence of the defect. La. C.C. Art. 2522. Plaintiff argues that SBT was told of all issues and problems with the work products as they occurred, and continuously made efforts to rectify the problems, but Plaintiff alleges it did not know the issues it was experiencing with the work products were a result of a defect in SBT's work. Defendants maintain that if the redhibition claim is not prescribed, then it must be waived since FABI continued to use the programs. A genuine issue of fact exists as to whether FABI waived any redhibition claim it had, and in regards to prescription, the extent of its knowledge of the defects and the extent SBT

15

undertook repairs as directed by Plaintiff. Although the Court therefore denies Defendants' motion at this time, it would entertain a properly supported Federal Rule of Civil Procedure 56 motion on this claim, in the event discovery warrants such a motion.

For these reasons, Defendants Motion to Dismiss is DENIED as to the redhibition claim. Plaintiff is granted leave to amend its complaint within twenty-one days of the issuance of this order to plead all necessary, relevant facts to comport with this Court's order.

### D. Louisiana Unfair Trade Practices Act (LUTPA) Claim

Louisiana Revised Statute Section 51:1401, *et seq.*, known as the Louisiana Unfair Trade Practices Act (LUTPA), governs Plaintiff's claim of unfair trade practices. Under LUTPA: "unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful." La. Rev. Stat. § 51:1405(A). LUTPA provides a means of recovery for "any person who suffers any ascertainable loss of money or movable property, corporeal or incorporeal, as a result of the use or employment by another person of an unfair or deceptive method, act, or practice declared unlawful by [Revised Statute] 51:1405." La. Rev. Stat. § 51:1409(A). There is a one year prescriptive period to bring an action under LUTPA, commencing from the time of the transaction or act which gave rise to the right of action. La. Rev. Stat. § 51:1409(E).

The threshold issue for LUTPA claims is whether a business which is not a direct competitor or individual consumer purchasing for personal, family or household use, has standing to bring a claim under LUTPA. The Fifth Circuit's only case on point, *Orthopedic Sports Injury Clinic v. Wang Labs., Inc.* 922 F.2d 220 (5th Cir. 1991), held that businesses who are not competitors do not have standing to bring a claim under LUTPA. However, subsequent to that decision, a plurality of the Louisiana Supreme Court held that LUTPA claims are not restricted to

these two groups. *Cheramie Servs., Inc. v. Shell Deepwater Prod., Inc.,* 35 So. 3d 1053, 1057 (La. 2010). ("LUTPA grants a right of action to any person, natural or juridical, who suffers an ascertainable loss.") Furthermore, state appellate courts in the Second and Third Circuits have reconsidered their prior interpretations of LUTPA following the *Cheramie* decision to comport with the more inclusive interpretation of the statute. *See Bogues v. Louisiana Energy Consultants, Inc.*, 71 So.3d 1128 (La.App. 2d Cir. 2011); *see also Granger v. Christus Health Cent. La.,* 97 So.3d 604 (La.App. 3d Cir. 2012), *aff'd in part and rev'd in part on other grounds*, 144 So.3d 736 (La. 2013).

The U.S. Fifth Circuit, however, has not had occasion to revisit its holding in *Wang Labs* since the *Cheramie* opinion was released. An apparent split among federal district courts has subsequently emerged: In this district, Judge Vance has found that a non-competitor business had standing when it alleged ascertainable losses as a result of unfair and deceptive acts (*NOLA Fine Art v. Ducks Unlimited, Inc.*, 88 F. Supp. 3d. 602 (E.D. La. February 12, 2015)), Judge Zainey has found that a construction lender had standing to sue developers (*Burgers v. Bickford*, 2014 U.S. Dist. LEXIS 117323, 2014 WL 4186758 (E.D. La. 2014)), and Judge Lemelle found standing when a contractual relationship existed between plaintiffs and defendants where unfair billing practices were claimed (*Max Access, Inc. v. Gee Cee Co. of LA,* 2016 U.S. Dist. LEXIS 14166, (E.D. La. February 5, 2016)). However, in the Western District, Judge Hicks found that a hotel franchisee did not have standing to sue a corporation managing a nationwide reservation system for franchisor (*Baba Lodging, LLC v. Wyndham Worldwide Operations, Inc.* 2012 US Dist. LEXIS 36891 (W.D. La. 2012)).

A federal court sitting in diversity is required to apply the law of the state, as declared by its legislature or the state's highest court. *See Erie v. Tompkins*, 304 U.S. 64 (1938). The Louisiana

Supreme Court's opinion in *Cheramie* is instructive to the federal court sitting in diversity. In light of *Cheramie*, the Court finds that Plaintiff does have standing to bring its LUTPA claim.

A successful LUTPA claim requires a showing that the defendant engaged in conduct that "offends established public policy and . . . is immoral, unethical, oppressive, unscrupulous, or substantially injurious." *Cheramie*, 35 So. 3d at 1059 (internal quotations omitted). "Fraud, misrepresentation, deception, and similar conduct is prohibited, mere negligence is not." *Turner v. Purina Mills, Inc.*, 989 F.2d 1419, 1422 (5th Cir. 1993), *citing Marshall v. Citicorp*, 601 So. 2d 669, 670 (La. App. 5Cir. 1992). Furthermore, LUTPA does not prohibit "sound business practices, the exercise of permissible business judgment, or appropriate free enterprise transactions." *Id. citing Monroe Medical Clinic, Inc. v. Hospital Corp. of America*, 522 So. 2d 1362, 1365 (La.App. 2 Cir. 1988). In fact, the range of prohibited practices under LUTPA is extremely narrow. *Turner*, 989 F.2d at 1422. LUTPA actions require a case-by-case analysis to determine whether the subject conduct is a violation of the statute. *Id.*

Additionally, LUTPA is not an alternative remedy for simple breach of contract claims. *Id.* "There is a great deal of daylight between a breach of contract claim and the egregious behavior the statute proscribes." *Id.* However, there is case law that actions that are in breach of a contract can have deceptive and unethical "undertones" that would allow a LUTPA claim to stand in addition to the breach of contract claims. *See Tubos de Acero de Mex. SA v. Am. Int'l Inv. Corp*, 292 F.3d 471 (5th Cir. 2002).

Plaintiff has based its LUTPA claim on allegations that SBT "refus[ed] to cooperate" during the transition period, "threaten[ed] to destroy FABI's business by disabling the work products" before the transition, misrepresentation, seeking additional concessions from FABI before releasing requested materials, providing incomplete or out-of-date materials and theft of

Plaintiff's trade secrets. Rec. Doc. 31 at 23. These allegations are similar to the breach of contract claim, but they are not identical as Defendants claim in their motion, since there are different elements alleged for each claim. *See* Rec. Doc. 31 at 10-11. However, Plaintiff has not included enough details to determine whether the actions alleged are "immoral, unethical, oppressive, unscrupulous, or substantially injurious" so as to give rise to a LUTPA claim.

For these reasons, Defendants Motion to Dismiss is DENIED as to the Louisiana Unfair Trade Practices Act claim. Plaintiff is granted leave to amend its complaint within twenty-one days of the issuance of this order to plead all necessary, relevant facts to comport with this Court's order.

### E. Conversion Claim

Under Louisiana law, a conversion occurs when:

(1) possession is acquired in an unauthorized manner;

(2) the chattel is removed from one place to another with the intent to exercise control over it;

(3) possession of the chattel is transferred without authority;

(4) possession is withheld from the owner or possessor;

(5) the chattel is altered or destroyed;

(6) the chattel is used improperly; or

(7) ownership is asserted over the chattel.

*Dual Drilling Co. v. Mills Equip. Invs.*, 721 So. 2d 853, 857 (La. 1998). The intent requirement is "not conscious wrongdoing, but rather, an intent to exercise a dominion or control over the goods that is inconsistent with another's rights." *Tubos de Acero de Mex., SA* 292 F.3d at 479, *citing La. State Bar Ass'n v. Hinrichs*, 486 So. 2d 116, 121 (La. 1986). Further, it does not matter "what subsequent application was made of the converted property, or that defendant derived no benefit

from his act." *Qualey v. Paine, Webber, Jackson & Curtis*, Inc. 475 So. 2d 756, 760 (La. 1985).

Therefore, for FABI to succeed on its conversion claim, it must prove (1) it owned the "customer

data and related account information" allegedly withheld by Defendants; (2) the possession by

Defendants was inconsistent with Plaintiff's rights of ownership; and (3) the possession constituted

a wrongful withholding of the information and data. *See Chrysler Credit Corp. v. Perry Chrysler*

*Plymouth, Inc.*, 783 F.2d 480, 484 (5th Cir. 1986).

FABI has alleged its conversion claim against SBT, and Fuente and Romero individually.

Defendants' motion only seeks to have the conversion claim against Fuente and Romero

dismissed. Rec. Doc. 41-3 at 21. Generally, under Louisiana law, third parties do not have a cause

of action against corporate directors and officers for negligence, mismanagement, breach of

fiduciary duty, or for debts of the corporation. *Cameron Equip. Co. v. Stewart & Stevenson Servs.*,

685 So. 2d 696, 700 (La.App. 3 Cir. 1996). "Officers, employees, and agents owe no duties to

third parties, and they cannot be found liable to third parties for their negligent acts and omissions

in a commercial context." *Id. citing Goodwin v. Agrilite of Louisiana*, 643 So. 2d 249 (La.App. 2

Cir. 1994), and *Korson v. Independence Mall I, LTD*, 595 So. 2d 1174 (La.App. 5 Cir. 1992).

Unless there is fraud, shareholders, directors, and officers are not personally liable for the debts of

the corporation, especially when they deal with other corporations. *Id.* Specifically, the Fifth

Circuit has held that a corporate officer "is not personally liable for the tortious acts of the

corporation in the absence of his own fraud, malfeasance, or other wrongdoing." *Chrysler Credit*

*Corp.* 783 F.2d at 484.

Thus, there are exceptions to the general rule shielding corporate officers from liability. In

addition to facing liability for their own fraud or wrongdoing, corporate officers can be "held

personally liable for damages resulting from [their] acts of conversion committed on behalf of the

corporation." *Tubos*, 292 F.3d at 479 *citing United States v. Hibernia Nat'l Bank*, 883 F.2d 961, 964 (5th Cir. 1989). The personal liability is "premised on the corporate officer's participation in the corporation's act of conversion, as opposed to personal benefit, if any, the corporate officer gained from the conversion." *Id.* This comports with other Louisiana cases that have recognized that "one who acts with another in keeping property from its rightful owner is guilty of conversion, and the fact that he acted as agent is no excuse." *Quealy v. Paine, Webber, Jackson & Curtis, Inc.*, 464 So. 2d 930, 935 (La.App. 4 Cir. 1985), *aff'd in part, rev'd in part on other grounds*, 475 So. 2d 756 (La. 1985); *see also Mauboules v. Broussard Rice Mills*, 379 So. 2d 1196, 1197-98 (La.App. 3 Cir. 1980); and *Edwards v. Max Thieme Chevrolet*, 191 So. 569, 571-72 (La.App. 2 Cir. 1939). Thus, under these cases, an agent who converts property for a principal may not escape liability on the ground that he was not consciously doing wrong. *United States v. Hibernia Nat'l Bank*, 882 F.2d 961, 964 (5th Cir. 1989). Similarly, corporate officers who personally participated in the acts of conversion are not shielded from liability. *Tubos*, 292 F.3d at 479.

FABI has not alleged the specific actions taken by defendants Fuente and Romero to convert FABI's property. Without specific allegations that Fuente and Romero, as officers of SBT, personally participated in the act of conversion, the Court cannot evaluate whether FABI has a claim against Fuente and Romero.

For these reasons, Defendants Motion to Dismiss is DENIED as to the conversion claim against Fuente and Romero. Plaintiff is granted leave to amend its complaint within twenty-one days of the issuance of this order to plead all necessary, relevant facts to comport with this Court's order.

## IV. CONCLUSION

Considering the foregoing,

21

**IT IS HEREBY ORDERED** that the defendants Smart Business Technology, Inc., Serafin Fuente and Carlos Romero's Motion to Dismiss (Rec. Doc. 41) is:

A. **GRANTED** as to Plaintiff's claim under the Louisiana Uniform Trade Secrets Act. Plaintiff's claims under the Louisiana Uniform Trade Secrets Act against all defendants are hereby **DISMISSED WITH PREJUDICE**;

B. **DENIED** as to Plaintiff's claim for fraudulent concealment against all defendants;

C. **DENIED** as to Plaintiff's claim for redhibition against Smart Business Technology, Inc.;

D. **DENIED** as to Plaintiff's Louisiana Unfair Trade Practices Act claim against Smart Business Technology, Inc.; and

E. **DENIED** as to Plaintiff's conversion claim against Serafin Fuente and Carlos Romero.

**IT IS FURTHER ORDERED** that Plaintiff has twenty-one (21) days from the issuance of this Order to file an amended Complaint containing specific facts to each claim:

A. To more particularly plead its fraudulent concealment claim against all Defendants, specifically its argument that Defendants had a duty to disclose;

B. To plead all necessary and relevant facts for its redhibition claim;

C. To plead all necessary and relevant facts for its Louisiana Unfair Trade Practices Act claim against Smart Business Technology, Inc.; and

D. To plead all necessary and relevant facts for its conversion claim against Serafin Fuente and Carlos Romero.

**IT IS FURTHER ORDERED** that Plaintiff's amended complaint filed in accordance with this Order shall supersede all prior complaints and shall include and restate all prior paragraphs on which it relies for each remaining claim.

**IT IS FURTHER ORDERED** that Plaintiff notify the Court if it wishes to abandon any of these claims due to insufficient facts, rather than amending its complaint as ordered.

New Orleans, Louisiana, this 11th day of April, 2016.

**KURT D. ENGELHARDT**
**UNITED STATES DISTRICT JUDGE**