UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

FIRST AMERICAN BANKCARD, INC.                          CIVIL ACTION

VERSUS                                                             NO. 15-638

SMART BUSINESS TECHNOLOGY,                             SECTION "N" (2)
INC., ET AL.

ORDER AND REASONS

Before the Court is the Motion to Dismiss (Rec. Doc. 69) that was filed by Smart Business

Technology, Inc. ("SBT"), Serafin Fuente ("Fuente") and Carlos Romero ("Romero") (SBT,

Fuente and Romero are collectively referred to as "Defendants") pursuant to Federal Rule of Civil

Procedure 12(b)(6). Plaintiff First American Bankcard, Inc. ("Plaintiff" or "FABI") opposes the

motion. Rec. Doc. 72. The Court granted Defendants' leave to reply to Plaintiff's opposition. Rec.

Docs. 76 and 77. Upon review of the record, the arguments of the parties, and applicable law, the

Court DENIES the motion, as set forth below.

I. BACKGROUND

Since the factual background of this case has been extensively recounted in several earlier

Orders and Reasons, *see* Rec. Docs. 66 and 67, the Court will limit the discussion to the relevant

procedural history. FABI filed the instant suit against SBT, Fuente and Romero (two of SBT's

officers), and POWA Technologies Limited, on March 3, 2015. *See* Rec. Doc. 1. On August 31,

2015, the Court granted plaintiff's motion to amend the complaint—filed in response to a motion

to dismiss by POWA Technologies Limited—which substituted in Powa Technologies, Inc.

("Powa"), the actual purchaser and owner of SBT. *See* Rec. Doc. 31. On October 14, 2015 Powa

filed a motion to dismiss for lack of personal jurisdiction, which the Court granted on March 21, 2016 dismissing Powa from the suit. *See* Rec. Docs. 43 and 66.

Defendants filed their first motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6) on October 5, 2015. *See* Rec. Doc. 41. The Court granted the motion in part to the claims under the Louisiana Uniform Trade Secrets Act and dismissed those claims against all defendants with prejudice. *See* Rec. Doc. 67. However, the Court denied the motion in part to the plaintiff's claims for fraudulent concealment, redhibition, conversion and under the Louisiana Unfair Trade Practices Act ("LUTPA"). *Id.* The Court ordered FABI to file an amended complaint to more particularly plead the fraudulent concealment claim and to plead all necessary and relevant facts for the other remaining claims. *Id.* Plaintiff complied, and filed a Second Amended Complaint on May 2, 2016, alleging a total of seven claims. *See* Rec. Doc. 68.

SBT, Fuente and Romero filed the instant motion to dismiss pursuant to Rule 12(b)(6) on May 16, 2016. Rec. Doc. 69. In the instant motion, Defendants argue that four of Plaintiff's seven claims in the Second Amended Complaint should be dismissed in whole or part, under Fed. R. Civ. P. 12(b)(6), specifically: (1) the conversion claim against SBT, Fuente and Romero; (2) the fraudulent concealment claim against SBT, Fuente and Romero; (3) the redhibition claim against SBT; and (4) the Louisiana Unfair Trade Practices Act ("LUTPA") against SBT. *Id.*

FABI filed an opposition to the motion, arguing that the Defendants' motion is improper under Fed. R. Civ. P. 12(g) or is an attempt to re-litigate issues more appropriate for summary judgment or trial. Rec. Doc. 72. Defendants were granted leave to file a reply memorandum in support of their motion. Rec. Docs. 76 & 77.

## II. ARGUMENTS OF THE PARTIES

### A. Availability of Rule 12(b)(6) Motion to Dismiss

As a threshold matter, Plaintiff argues that Defendants' motion is either improper under Fed. R. Civ. P. 12(g), or an attempt to re-litigate issues more appropriate for summary judgment or trial. Rec. Doc. 72 at 1. Defendants' contend that Rule 12(g) does not prohibit them from raising a Rule 12(b)(6) motion against a Second Amended Complaint. Rec. Doc. 77 at 1. Further, Defendants argue that Rule 12(b)(6) motions are not waived under Rule 12(h), and are permitted in any pleading under Rule 7(a), Rule 12(c) or at trial; thus a successive Rule 12(b)(6) motion is not prohibited. *Id.* at 2-4. Finally, Defendants contend that because Plaintiff's Second Amended Complaint fully supersedes its two previous complaints, they are within their right to file a second Rule 12(b)(6) motion. *Id.* at 3.

### B. Conversion Claim against SBT, Fuente & Romero

Defendants argue that Plaintiff's Second Amended Complaint fails to state a claim for conversion upon which relief can be granted for either one of two alternate reasons. First, if the Court finds that the fully-populated configuration tables, customer data, and related account information for the FABICash and FABITrack programs (collectively referred to as the "Work Products") allegedly withheld by SBT are intellectual property, and therefore are categorized as intangible property, then the Work Products are outside the scope of Louisiana conversion law. Rec. Doc. 69-1 at 2-3. However, Defendants have only cited to decisions by the District Court for the Western District of Louisiana and the Bankruptcy Court here in the Eastern District in support of this contention. Alternatively, Defendants argue that if the Court instead finds that the Work Products are tangible, then Plaintiff's conversion claim is preempted by Section 301(a) of the Copyright Act because it concerns a computer software program, citing to the Fifth Circuit

3

decision in *Spear Marketing, Inc. v. BancorpSouth Bank*, 791 F.3d 586 (5th Cir. 2015). *Id.* at 3. Further, Defendants contend that any technical trade secrets, such as proprietary customer data and related account information referred to in Plaintiff's complaint, are also within the subject matter of copyright and subject to preemption. *Id.*

Plaintiff argues that Defendants have raised the issues of intellectual property being outside Louisiana conversion law and copyright preemption for the first time in this instant motion to dismiss. Rec. Doc. 72 at 2. Plaintiff cites to Wright & Miller § 1388 and a Northern District of Illinois case for support of its contention that an amended complaint does not revive defenses available the first time around, but not asserted. *Id.* Plaintiff argues that Defendants are precluded from raising these issues in their second motion to dismiss.[1] Out of an abundance of caution however, Plaintiff addresses the merits of Defendants' arguments, citing to a Louisiana Supreme Court case finding that computer software is tangible personal property where some physical copy is contemplated. Rec. Doc. 72 at 3; *citing South Cent. Bell Telephone Co. v. Barthelemy*, 643 So.2d 1240, 1246 (La. 1994). Plaintiff maintains that the agreement between itself and SBT provides for "delivery" of the source code and thus the Work Products would be merged with a physical medium and thus be tangible. Rec. Doc. 72 at 3-4. Further, Plaintiff argues that there is no copyright preemption since its conversion claim is for wrongful withholding of "proprietary customer data" and "related account information," not wrongful copying, distribution or performance of an interest protected under the Copyright Act. *Id.* at 4.

---

[1] Plaintiff calls the instant motion to dismiss Defendants' third such motion. However, the first motion to dismiss filed by Defendants, which concerned the original complaint, (Rec. Doc. 11) was withdrawn per an Order dated September 15, 2015, signed by Judge Helen G. Berrigan (Rec. Doc. 37) after Plaintiff moved for leave to file a First Amended Complaint (Rec. Doc. 28).

### C. Fraudulent Concealment Claim against SBT, Fuente & Romero

Defendants maintain that without a showing of a fiduciary relationship between the parties, there is no duty to speak, and thus Plaintiff's claim for fraudulent concealment must be dismissed. Rec. Doc. 69-1 at 4.The Court previously allowed Plaintiff to amend its complaint in order to plead additional facts in support of this claim, specifically, the factual basis for Plaintiff's claim that Defendants had a duty to disclose. Rec. Doc. 67 at 12. Defendants argue that Plaintiff has failed to show enough facts in its Second Amended Complaint that such a duty to speak existed, particularly because Plaintiff bases its claim on the "friendly relationship" between Defendants Mr. Fuente and Mr. Romero and Plaintiff's president Mr. Rabito. Rec. Doc. 69-1 at 4. Citing to the Fifth Circuit decision in *ARA Automotive Group v. Cent. Garage, Inc.*, 124 F.3d 720 (1997), Defendants contend that a friendship, no matter how close or long it was, does not give rise to a fiduciary relationship.

Plaintiff avers that its Second Amended Complaint alleges sufficient facts for the Court to find that Defendants had a duty to speak, even without a finding that a fiduciary relationship existed between the parties. Rec. Doc. 72 at 4. Relying on the Court's Order on Defendant's previous motion to dismiss and the cases cited within, Plaintiff argues that Defendants Fuente and Romero created the duty to speak by voluntarily informing Plaintiff that the Work Products "would be hosted on multiple servers." *Id.* at 4-5. Due to the voluntary disclosure of this information, Plaintiff maintains that Defendants' duty to speak arose by operation of law once they learned their previous statement to Plaintiff was false and/or misleading. *Id.* at 5. Further, Plaintiff contends that Defendants' focus on showing a fiduciary relationship did not exist between the parties, confuses the issue, as Plaintiff argues it need only show a confidential relationship existed. *Id.* at 5-6.

### D. Redhibition Claim against SBT

Defendants' first motion to dismiss argued for dismissal of Plaintiff's redhibition claim based on one of three reasons: (1) there is no cause of action for redhibition because the contract at issue was not for the sale of a thing; (2) in the alternative, if there is a valid claim of redhibition, that claim is prescribed; or (3) in the alternative, if there is a valid claim of redhibition, it was waived or is estopped by plaintiff's continued use. *See* Rec. Doc. 41-3 at 9-19. The Court previously held that the parties' agreement was a contract of sale under Louisiana law, but a genuine issue of fact remained regarding prescription and waiver. Rec. Doc. 67 at 14. Defendants reiterate their three arguments against the redhibition claim for the reasons set forth in their previous memorandum, in order to preserve their arguments for appeal and future proceedings. Rec. Doc. 69-1 at 5. Plaintiff's opposition states that since Defendants' have not put forth a new argument on the redhibition claim, but merely "preserved" the issue, no response is necessary at this time. Rec. Doc. 72 at 6. Accordingly, the Court will not readdress this issue, as it has previously ruled on the matter. *See* Rec. Doc. 67.

### E. Louisiana Unfair Trade Practices Act (LUTPA) Claim against SBT

Defendant SBT argues that Plaintiff has failed to allege additional facts in support of its LUTPA claim as instructed by the Court's previous Order, and instead has provided only "speculation as to the alleged motive for the facts it previously alleged." Rec. Doc. 69 at 6. Arguing that these allegations are not enough to state a claim under LUTPA, SBT contends that the actions complained of do not rise to the level of egregiousness required for a LUTPA claim. *Id.* at 7-8.

In response, Plaintiff maintains that it is necessary to show the intent or motive behind SBT's actions in order to sufficiently allege the overall context of SBT's actions were "immoral,

unethical, oppressive, unscrupulous or substantially injurious." Rec. Doc. 72 at 6. Plaintiff reiterates that LUTPA claims are decided on a case-by-case basis, and the defendant's motivation is a "critical factor" in determining whether the actions were taken with the specific purpose of harming the competition. *Id. citing Nursing Enterprises, Inc. v. Marr*, 719 So. 2d 524, 528 (La.App. 2nd Cir. 1998).

### III. LAW AND ANALYSIS

A motion to dismiss under Rule 12(b)(6) may be granted when a complaint fails to allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).The well-pleaded factual allegations of the complaint, taken as true, must raise the plaintiff's right to recover above the speculative level. *Twombly*, 550 U.S. at 555-56. Facts from which the court could infer the mere possibility of liability will not suffice. *Iqbal*, 556 U.S. at 678 (quoting Fed. R. Civ. P. 8(a)(2)). *A fortiori*, a complaint may be dismissed when it appears "beyond a doubt that plaintiff can prove no set of facts" that would entitle him to prevail. *Twombly*, 550 U.S. at 560-61.

On a motion to dismiss, the court must take all well-pleaded factual allegations of the complaint as true and draw all reasonable inferences in favor of the plaintiff. *In re Katrina Canal Breaches Litigation*, 495 F.3d 191, 205 (5th Cir. 2007). Nevertheless, "conclusory allegations and unwarranted deductions of fact are not admitted as true, especially when such conclusions are contradicted by facts disclosed by a document appended to the complaint." *Associated Builders, Inc. v. Alabama Power Company*, 505 F.2d 97, 100 (5th Cir. 1974). However, the Fifth Circuit has

stated that motions to dismiss under Rule 12(b)(6) are "viewed with disfavor and [are] . . . rarely granted." *Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 232 (5th Cir. 2009).

### A. Successive 12(b)(6) Motions

As a threshold matter, Plaintiff has raised the issue that Defendants' motion is either improper under Fed. R. Civ. P. 12(g) or an attempt to re-litigate issues more appropriate for summary judgment or trial. Rec. Doc. 72 at 1. Federal Rule of Civil Procedure 12(g)(2) states: "[e]xcept as provided in Rule 12(h)(2) or (3), a party that makes a motion under this rule must not make another motion under this rule raising a defense or objection that was available to the party but omitted from its earlier motion." Rule 12(h)(1) states that the defenses listed in Rule 12(b)(2)-(5) are waived if not raised in its first motion under Rule 12 or its responsive pleading. However, Rule 12(h)(2) states that the defense afforded by 12(b)(6), failure to state a claim upon which relief can be granted, can be raised in any pleading allowed or ordered under Rule 7(a), by a Rule 12(c) motion for judgment on the pleadings, or at trial. Rule 12(c) motions are guided by the same standards as Rule 12(b)(6) motions. *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 330 n.8 (5th Cir. 2002).

However, Plaintiff curiously omits from its argument that Defendants' current 12(b)(6) motion was filed in response to Plaintiff's Second Amended Complaint. "[I]f a plaintiff amends his complaint, a defendant may file a new responsive pleading because the amended complaint typically causes the original pleading to be of 'no legal effect.'" *U.S. ex rel. Bias v. Tangipahoa Parish School Board*, 816 F. 3d 315, 322 (5th Cir. 2016), *quoting King v. Dogan*, 31 F.3d 344, 346 (5th Cir. 1994). Per the Court's Order, Plaintiff's amended complaint was to completely supersede its prior complaints. Thus, Defendants are within their right to file the instant motion to

dismiss, as it is the first responsive pleading they have filed after the Second Amended Complaint was filed.

### B. Conversion Claim

As stated in this Court's previous Order, under Louisiana law, a conversion occurs when:

(1) possession is acquired in an unauthorized manner;

(2) the chattel is removed from one place to another with the intent to exercise control over it;

(3) possession of the chattel is transferred without authority;

(4) possession is withheld from the owner or possessor;

(5) the chattel is altered or destroyed;

(6) the chattel is used improperly; or

(7) ownership is asserted over the chattel.

*Dual Drilling Co. v. Mills Equip. Invs.*, 721 So. 2d 853, 857 (La. 1998). The intent requirement is "not conscious wrongdoing, but rather, an intent to exercise a dominion or control over the goods that is inconsistent with another's rights." *Tubos de Acero de Mex., SA* 292 F.3d at 479, *citing La. State Bar Ass'n v. Hinrichs*, 486 So. 2d 116, 121 (La. 1986). Further, it does not matter "what subsequent application was made of the converted property, or that defendant derived no benefit from his act." *Quealy v. Paine, Webber, Jackson & Curtis*, Inc. 475 So. 2d 756, 760 (La. 1985).

In its previous Order, the Court found that Plaintiff had not alleged the specific actions taken by defendants Fuente and Romero to convert Plaintiff's alleged property. Without specific allegations that Fuente and Romero, as officers of SBT, personally participated in the act of conversion, the Court could not evaluate whether Plaintiff had a viable claim against Fuente and Romero. The Court granted Plaintiff the opportunity to amend its complaint so as to plead the necessary and relevant facts against Fuente and Romero. Defendants now seek the dismissal of the

conversion claim against all three defendants under either one of two alternate theories: (1) that the Work Products allegedly withheld by SBT are intellectual property, and therefore are intangible property which are outside the scope of Louisiana conversion law; or (2) if the Work Products are found to be tangible, then the conversion claim is preempted by Section 301(a) of the Copyright Act.

### 1. Whether the Withheld Items are Properly Categorized as Tangible or Intangible

"Chattel" is defined as "movable or transferable property; personal property; esp., a physical object capable of manual delivery and not the subject matter of real property." BLACK'S LAW DICTIONARY (10th ed. 2014). In Louisiana, this type of property is considered "corporeal moveable" property. La. Civ. Code Art. 471. Some courts have followed the Restatement (Second) of Torts § 242 in developing rules that intangible property can be converted if the right is embodied in or merged into a document, such as internet domain names. *See Kremen v. Cohen*, 337 F.3d 1024 (9th Cir. 2003). Louisiana has limited conversion of intangible property rights to those which are *traditionally* merged into or identified with some document, such as stock certificates and bonds. *See*, *e.g., Succession of McGuire*, 92 So. 40, 42 (La. 1922).

The Louisiana Supreme Court has ruled that computer software, however, is tangible property, which "is synonymous with corporeal movable property as used in the Louisiana Civil Code". *South Cent. Bell Tel. Co. v. Barthelemy*, 643 So. 2d 1240, 1243 (1994). Rationalizing that since the "body of information" was stored either on magnetic tape, disc, or computer chip, the Louisiana Supreme Court found it was physically manifested into an electronic machine readable form, or code. *Id.* at 1246. Further, because the information was "recorded in a physical form which has physical existence, takes up space on the tape, disc, or hard drive, makes physical things happen and can be perceived by the senses," the software was corporeal. *Id.* "Tangibility is not a

10

defining quality of physicality according to Louisiana law. The Louisiana Supreme Court determined that though electronic data is not tangible, it is still physical because it can be observed and altered though human action." *Landmark Am. Ins. Co. v. Gulf Coast Analytical Labs., Inc.*, 2012 U.S. Dist. LEXIS 45184, *9-10 (M.D. La. 2012); *citing South Cent.* 643 So. 2d at 1244.

"The purchaser of computer software neither desires not receives mere knowledge, but rather receives a certain arrangement of matter that will make his or her computer perform a desired function. This arrangement of matter, physically recorded on some tangible medium, constitutes a corporeal body." *South Cent.* 643 So. 2d at 1246. The mode of delivery of the software is not relevant to this determination: "[t]hat the information, knowledge, story, or idea, physically manifested in recorded form, can be transferred from one medium to another does not affect the nature of that physical manifestation as corporeal, or tangible." *Id.* at 1247.

Although the *South Central* decision is over twenty years old, the premise is still applicable. For example, the Louisiana Fifth Circuit Court of Appeal, in 2011, found that AutoCAD files were corporeal movables because the files were copied from the software and physically manifested onto CD ROMS. *State v. Williamson*, 81 So. 3d 156 (La. App. 5th Cir. 2011). In 2012, the United States District Court for the Middle District of Louisiana, following *South Central*, determined that electronic chemical analysis data stored on a hard disk storage system was a corporeal movable. *Landmark Am. Ins. Co. v. Gulf Coast Analytical Labs, Inc.*, 2012 U.S. Dist. LEXIS 45184 (M.D. La. 2012).

The Work Products are defined in Plaintiff's complaint as the FABICash and FABITrack programs, and the development of these programs was the main focus of the agreement between the parties. Rec. Doc. 68 at 4. Plaintiff has alleged that Defendants are withholding "certain proprietary customer data and related account information" including "the fully-populated

11

configuration tables, customer lists, and financial records" which are components of the Work Products. *Id.* at 7, 10. According to Plaintiff, the withheld information is "integral to FABI's Work Products." *Id.* at 6. For example, the Second Amended Complaint alleges the financial records were stored and maintained per agreement between Plaintiff and its clients and contained "receipts necessary to verify individual transactions previously performed by and through the Work Products." *Id.* at 7. The withheld items appear to be predominately data tables needed for the programs and software Plaintiff contracted with Defendant SBT to develop, and without which, the programs and software do not operate the way intended or sought by Plaintiff. The allegedly withheld items are stored on a disc, server, or hard drive and are tangible items under Louisiana law.[2]

### 2. Whether the Conversion Claim is preempted by the Copyright Act

"The Copyright Act expressly preempts all causes of action falling within its scope, with a few exceptions." *Daboub v. Gibbons*, 42 F.3d 285, 288 (5th Cir. 1995); *see* 17 U.S.C. § 301.[3] The main purpose behind 17 U.S.C. § 301 is to create a uniform method for protecting and enforcing

---

[2] Defendants argue that with modern technology, particularly "in the era of cloud computing, interrelated networks, file sharing, and the like, computer software and data need not exist in physical form." Rec. Doc. 77 at 5. However, this statement belies a misunderstanding of the holding in *South Central* and how cloud computing works. It was the electrical encoding of the information into a machine readable language "by arranging electrons, by use of an electric current, to create either a magnetized or unmagnetized space" (i.e. binary code) that made the software tangible. *South Central*, 643 So. 2d at 1246. When recorded in a physical existence, it takes up space on the hard drive or server, makes physical things happen, and can be perceived by the senses. *Id* at 1246. "In defining tangible, 'seen' is not limited to the unaided eye, 'weighed' is not limited to the butcher or bathroom scale, and 'measured' is not limited to a yardstick." *Id.*

 Cloud computing still relies on tangible software encoded onto physical servers to store the information, it is just that those servers are only connected to the end user through a network, such as the internet, rather than stored on the user's personal hard drive or local network server. *See* Griffith, Eric, "What is Cloud Computing" PC Mag, May 3, 2016 www.pcmag.com/article2/0,2817,2372163,00.asp (last accessed September 29, 2016). The location of the server does not make the software any less tangible.

[3] 17 U.S.C. § 301 states: "[A]ll legal or equitable rights that are equivalent to any of the exclusive rights within the general scope of copyright as specified by section 106 in works of authorship that are fixed in a tangible medium of expression and come with the subject matter of copyright as specified by sections 102 and 103, whether . . . published or unpublished, are governed exclusively by this title. Thereafter, no person is entitled to any such right or equivalent right in any such work under the common law or statutes of any State."

certain rights in intellectual property by preempting other claims. *Daboub*, 42 F.3d at 288. The Fifth Circuit Court of Appeals has articulated a two-step test to determine if a claim falls within the preemptive scope of the Copyright Act: (1) whether the cause of action "falls within the subject matter of copyright;" and (2) whether the cause of action "protects rights that are equivalent to any of the exclusive rights of a federal copyright as provided in 17 U.S.C. § 106." *Id.* at 289. Both prongs of the test must be satisfied for preemption to occur. *Carson v. Dynegy, Inc.*, 344 F.3d 446, 456 (5th Cir. 2003).

The language of 17 U.S.C. § 102 is helpful to determine the first prong, whether the cause of action falls within the subject matter of copyright. Section 102(a) provides copyright protection for "original works of authorship fixed in any tangible medium of expression . . . from which they can be perceived, reproduced, or otherwise communicated, either directly or with the aid of a machine or device." 17 U.S.C. § 102(a). However, subsection (b) provides that there is no copyright protection for "any idea, procedure, process, system, method of operation, concept, principle, or discovery, regardless of the form in which it is described, explained, illustrated, or embodied" in an original work of authorship. 17 U.S.C. § 102(b). The Fifth Circuit has declared that computer software is a tangible medium protected by the Copyright Act. *Spear Mktg. v. BancorpSouth Bank*, 791 F.3d 586, 597 (5th Cir. 2015). The input data used within a software program and the output data generated by a software program are also "fixed" within a tangible medium (the software) and because the software is within the subject matter of copyright, so too is the data contained within it. *Id.* Therefore, the "fully populated configuration tables, customer lists, and financial records" are fixed within a tangible medium, and are within the subject matter of the Copyright Act.

13

When evaluating the equivalency of rights prong, courts use an analysis commonly referred to as the "extra element" test. *Alcatel USA, Inc. v. DGI Technologies, Inc.,* 166 F.3d 772, 787 (5th Cir. 1999).  If "one or more qualitatively different elements are required to constitute the state-created cause of action being asserted, then the right granted under state law does not lie within the general scope of copyright, and preemption does not occur." *Id.* (internal quotation marks omitted). Section 106 grants the holder of a copyright the exclusive right to reproduce, distribute, perform and display the copyrighted work. 17 U.S.C. § 106. Under Louisiana law, a conversion of physical property requires a showing of an "unlawful interference with ownership or possession of a movable." *Dual Drilling Co. v. Mills Equip. Invs.*, 721 So.2d 853, 857 (La. 1998). Thus, a conversion claim, for example, will survive copyright preemption where the plaintiff pleads conversion of tangible physical property. *See Carson v. Dynegy*, 344 F.3d 446, 456-57 (5th Cir. 2003). Where plaintiff has pled only the unlawful retention of its intellectual property rights, however, a conversion claim will be preempted by federal copyright law. *Id.*

Defendants rely on *Spear Marketing v. BancorpSouth Bank*, to support their argument that a state-law conversion claim regarding a software program is preempted by the Copyright Act. 791 F.3d 586 (5th Cir. 2015).  In *Spear Marketing*, the Fifth Circuit found that the plaintiff's "state law claims based on ideas fixed in tangible media are preempted by § 301." 791 F.3d at 597. Specifically, "the technical trade secrets found within [the software at issue] fall within the subject matter of copyright." *Id.* However, the Fifth Circuit did add that, to the extent that the plaintiff's claim alleged conversion of physical property, it was not preempted by § 301. *Id.* "Physical property – as opposed to intellectual property fixed in a tangible medium – does not fall within the scope of interest protected by the Copyright Act. *Id.*

14

Moreover, the underlying facts differentiate *Spear Marketing* from the instant matter: in *Spear* the plaintiff had previously developed a software program and entered into user agreements with its customers, whereby the customers could remotely access the software, but were never given a copy of the software itself. *Id.* at 590. At some point, the plaintiff's competitor, the defendant, contracted with one of these customers and agreed to integrate the plaintiff's product with its own competing program. *Id.* At roughly the same time, the plaintiff had reached out to the defendant to see if the defendant was interested in acquiring the plaintiff and its software. *Id.* As part of those negotiations, the plaintiff had demonstrated its product for the defendant, disclosing confidential business and technical information about the software. *Id.* Instead of acquiring the plaintiff, the defendant worked with the customer to update and implement the defendant's own software using the plaintiff's as a guide. *Id.* When this process was complete, the customer canceled its agreement with the plaintiff and contracted with the defendant. *Id.* The crux of the plaintiff's arguments for its conversion claim was that the defendant competitor and customer stole "trade secrets pertaining to [its] proprietary ideas, processes, and/or other methodologies of [the software]". *Id* at 597. The Fifth Circuit held that "to the extent [the conversion claim] allege[d] conversion of intangible 'confidential information' and 'certain trade secrets'" it was preempted. *Id.* at 598. However, the *Spear* defendants never had actual physical control over the software, as is the case in the instant matter.

The agreement between Plaintiff and SBT makes it clear that the software was being developed for Plaintiff, and Plaintiff would own the end result. The agreement stipulated that the "completed computer programs, deliverables, and all other works of authorship developed and created by [SBT] for FABI pursuant to [their prior agreements], belong exclusively to FABI. . ." Rec. Doc. 68-1 at 1-2. However, SBT did retain "all right, title and ownership interests in and to

the basic underlying algorithms and structures used in the [W]ork [P]roducts and nothing herein shall prevent [SBT] from using its code in other products." *Id.* Further, the agreement states that Defendants would "have access to certain confidential and proprietary information and trade secrets of [Plaintiff], including, without limitation, customer lists, account information, contact lists, market plans and research, personnel records, financial and accounting records, as well as all information in the FABI Customer Database." *Id.* at 2.

Plaintiff has alleged that Defendants have wrongfully withheld the tangible data of "certain proprietary customer data and related account information" including "the fully-populated configuration tables, customer lists, and financial records."  Rec. Doc. 68 at 7, 10. Plaintiff has made allegations regarding specific tangible items being withheld by the Defendants that are rightfully owned by Plaintiff: the input data necessary for the software to run as anticipated, and the historical data output of the software. Plaintiff has not alleged that Defendants have used, reproduced, or distributed this data other than in an agreed upon manner. Thus, while the alleged conversion claim covers materials that would fall under the Copyright Act, the rights sought to be protected by the conversion claim are not equivalent to any of the exclusive rights of a federal copyright, and are therefore, not preempted.

For these reasons, Defendants' Motion to Dismiss is DENIED as to Plaintiff's conversion claim.

### C. Fraudulent Concealment Claim

Fraud under Louisiana law entails a "misrepresentation or suppression of the truth made with the intention to obtain an unjust advantage for one party or to cause a loss or inconvenience to the other." La. Civ. Code Art. 1953. The Fifth Circuit has stated the requisite elements of a fraud claim are: "(1) a misstatement or omission; (2) of material fact; (3) made with the intent to defraud;

(4) on which the plaintiff relied; and (5) which proximately caused the plaintiff's injury." *Williams v. WMX Techs.*, 112 F.3d 175, 177 (5th Cir. 1997), *citing Cyrak v. Lemon*, 919 F.2d 320 (5th Cir. 1990). Federal Rule of Civil Procedure 9(b) requires that all claims of fraud be pled with particularity, including "time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby." *Tel-Phonic Services, Inc. v. TBS International, Inc.,* 975 F.2d 1134, 1138 (5th Cir. 1992).

However, fraud by omission or silence "'is by its very nature difficult to plead with particularity.' Because it does not involve an affirmative misrepresentation, it often does not occur at a specific place or precise time, or involve specific persons." *Chrysler Credit Corp. v. Whitney Nat'l Bank*, 824 F. Supp. 587, 598 (E.D. La. 1993)(J. Clement), *quoting Daher v. G.D. Searle & Co.*, 695 F. Supp. 436, 440 (D. Minn. 1988). Judge Clement found that at a minimum, a plaintiff alleging fraud by silence must show (1) the information that was withheld, (2) the general time period during which the fraudulent conduct occurred, (3) the relationship giving rise to the duty to speak, and (4) what the person or entity engaged in the fraudulent conduct gained by withholding the information. *Id.*

For claims of fraud by silence or omission, there first must be a duty to speak or disclose information. *Greene v. Gulf Coast* Bank, 593 So.2d 630 (La. 1992). There is no general duty to speak under Louisiana law, but such a duty may exist in a fiduciary relationship. *Id.* at 632. A fiduciary relationship has been described by the Louisiana Supreme court as "one that exists when confidence is reposed on one side and there is resulting superiority and influence on the other." *Plaquemines Parish Commission Council v. Delta Development Company, Inc.*, 502 So. 2d 1034 (La. 1987). There has been no allegation in this matter that a fiduciary relationship existed between the parties which would have resulted in a duty to disclose.

17

However, Louisiana law includes an exception to the no general duty to speak rule in non-fiduciary situations: "'[a]lthough a party may keep absolute silence and violate no rule of law or equity . . . if he volunteers to speak and to convey information which may influence the conduct of the other party, he is bound to [disclose] the whole truth.'" *Kadlec Med. Ctr. v. Lakeview Anesthesia Assocs.*, 527 F.3d 412, 419 (5th Cir. 2008), *quoting American Guaranty Co. v. Sunset Realty & Planting Co.*, 23 So. 2d 409, 455-56 (La. 1944). The Fifth Circuit has further stated that after reviewing Louisiana cases on the issue, "before a duty to disclose is imposed the defendant must have had a pecuniary interest in the transaction." *Id.* at 420, *citing Barrie v. V.P. Exterminators, Inc.*, 625 So. 2d 1007, 1017 (La. 1993) ("Due to V.P.'s pecuniary interest in supplying the information, the duty arose to exercise reasonable care"). "The fact that the information is given in the course of the defendant's business, profession or employment is a sufficient indication that he has a pecuniary interest in it, even though he receives no consideration for it at the time." *Anderson v. Heck*, 554 So. 2d 695, 705 (La. App. 1st Cir. 1989), *quoting* RESTATEMENT (SECOND) OF TORTS § 552, cmt d. *See also Dousson v. South Central Bell*, 429 So. 2d 466, 468 (La. App. 4th Cir. 1983)

Louisiana courts have "tended to impose a duty [to speak] when the circumstances are such that the failure to disclose would violate a standard requiring conformity to what the ordinary ethical person would have disclosed." *Bunge Corp.*, 557 So. 2d 1376, 1384 (La. 1990). Whether this duty exists is a legal question, with relevant factors including: "whether the obligation is being imposed on a seller, who is more likely to be required to disclose; the importance of the fact not disclosed; the relationship of the parties; and the nature of the fact not disclosed." *Id.* Further, "in contracts for sale, if the vendor conceals an intrinsic defect not discoverable by reasonable care, there is a much greater likelihood of the existence of a duty to disclose the non-discoverable and

intrinsic defect than there would be to disclose something extrinsic such as a fact likely to affect market value." *Id.*

Plaintiff has alleged the exact information withheld: only one dedicated server was utilized to host the Work Products instead of two, resulting in a lack of redundancy, and allegedly causing prolonged outages and malfunctions with the system. Plaintiff has alleged the dates of omissions: from 2009 until 2014. Plaintiff has also alleged that Defendants were motivated to withhold the true cause of the system failures so as to keep Plaintiff as a paying client. Plaintiff claims that Defendants Fuente and Romero were looking to sell SBT, and without Plaintiff's business, such a sale would have been unlikely. Thus, the only remaining factor to be addressed is the relationship giving rise to the duty to speak or disclose.

While there was no fiduciary relationship giving rise to a duty to speak, Plaintiff has alleged that Fuente and Romero had "an affirmative duty to provide complete and accurate information to Plaintiff" based on their previous voluntary representations regarding the hosting services SBT was to provide. Rec. Doc. 68 at 15. By alleging that Defendants Fuente and Romero knew that the lack of redundancy was the cause of the outages and malfunctions with the system, Plaintiff claims Defendants fraudulently concealed the real cause by representing to Plaintiff that the failures were beyond Defendants' control. Plaintiff references a specific communication between the parties, on August 24, 2014 where Fuente denied an outage occurred and blamed any issue with the system on "a slowdown of traffic."[4] Plaintiff contends that Defendants knew the cause of the system failures and outages, yet still made the allegedly false statements to Plaintiff.

In the alternative, Plaintiff also argues that Defendants Fuente and Romero failed to make a reasonable examination to determine if the fact on which representations were made were true

---

[4] This email has not been provided to the Court, but is specifically referenced in the Second Amended Complaint.

or false, had no sufficient basis upon which to make the representations, and knowingly made false representations. Further, Plaintiff contends that it was reasonable to rely on statements and information conveyed by the Defendants because the Defendants held themselves out as experts on technological issues with which Plaintiff admittedly was not familiar nor would have had the access to verify.

Plaintiff also argues that a "relationship of trust and confidence" existed between Plaintiff's president and Defendants Fuente and Romero, and cites to several personal interactions to show the development of this relationship.[5] Plaintiff further claims this relationship was purposely developed by Fuente and Romero to "perpetuate and conceal their fraud." The Court does not find these few isolated personal interactions as indicative of a relationship of trust and confidence, nor would such a finding automatically impose a duty to disclose under Louisiana law.

However, the Court is persuaded that there are enough alleged facts in support of Plaintiff's contentions to survive a Rule 12(b)(6) motion to dismiss. First, as mentioned previously, Plaintiff has alleged sufficient facts to meet three of the four elements required to show fraud by silence as posited by Judge Clement. As to the fourth element, the Court finds that enough has been alleged to support the existence of a duty to disclose. Specifically, Fuente and Romero purportedly had a pecuniary interest in the information provided to Plaintiff since it was within the course of their employment with SBT, and the information was provided during discussions for Plaintiff's business. Once they supposedly volunteered information about the server situation, under Louisiana law, they had a duty to disclose the whole truth, or to correct their misstatements once

---

[5] These personal encounters include: (1) Fuente and Romero attending FABI's President's wedding in 2010; (2) Romero inviting a FABI employee to stay in his Miami home while in town to compete in a triathlon; (3) Romero and his family attending said triathlon and cheering on the FABI employee. *See* Rec. Doc. 68 at 16.

they learned the truth, since they knew the information they provided could influence Plaintiff's conduct.

For these reasons, Defendants' Motion to Dismiss is DENIED as to Plaintiff's fraudulent concealment claim.

### D. Louisiana Unfair Trade Practices Act (LUTPA) Claim

Louisiana Revised Statute Section 51:1401, *et seq.*, known as the Louisiana Unfair Trade Practices Act (LUTPA), governs Plaintiff's claim of unfair trade practices. Under the LUTPA: "unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful." La. Rev. Stat. § 51:1405(A). The LUTPA provides a means of recovery for "any person who suffers any ascertainable loss of money or movable property, corporeal or incorporeal, as a result of the use or employment by another person of an unfair or deceptive method, act, or practice declared unlawful by [Revised Statute] 51:1405." La. Rev. Stat. § 51:1409(A). There is a one year prescriptive period to bring an action under LUTPA, commencing from the time of the transaction or act which gave rise to the right of action. La. Rev. Stat. § 51:1409(E). The threshold issue for LUTPA claims is whether a business which is not a direct competitor or individual consumer purchasing for personal, family or household use, has standing to bring a claim under LUTPA. Previously, the Court found that that Plaintiff does have standing to bring its LUTPA claim. *See* Rec. Doc. 67 at 18.

A successful LUTPA claim requires a showing that the defendant engaged in conduct that "offends established public policy and . . . is immoral, unethical, oppressive, unscrupulous, or substantially injurious." *Cheramie Servs., Inc. v. Shell Deepwater Prod. Inc.*, 35 So. 3d 1053, 1059 (La. 2010) (internal quotations omitted). "Fraud, misrepresentation, deception, and similar conduct is prohibited, mere negligence is not." *Turner v. Purina Mills, Inc.*, 989 F.2d 1419, 1422 (5th Cir.

1993), *citing Marshall v. Citicorp*, 601 So. 2d 669, 670 (La. App. 5th Cir. 1992). The actions complained of must be "egregious" and as a result, often involve "the breach of a special relationship of trust." *Cheramie*, 35 So. 3d at 1060. "A defendant's motivation is a critical factor; the actions must have been taken with the specific purpose of harming the competition." *Nursing Enters. v. Marr*, 719 So. 2d 524, 528 (La. App. 2nd Cir. 1998).  Nevertheless, LUTPA does not prohibit "sound business practices, the exercise of permissible business judgment, or appropriate free enterprise transactions." *Turner*, 989 F.2d at 1422, *citing Monroe Medical Clinic, Inc. v. Hospital Corp. of America*, 522 So. 2d 1362, 1365 (La. App. 2nd Cir. 1988). In fact, the range of prohibited practices under LUTPA is extremely narrow. *Turner*, 989 F.2d at 1422. LUTPA actions require a case-by-case analysis to determine whether the subject conduct is a violation of the statute. *Id.*

However, LUTPA is not an alternative remedy for simple breach of contract claims. *Id.* "There is a great deal of daylight between a breach of contract claim and the egregious behavior the statute proscribes." *Id.*  However, actions that are in breach of a contract can have deceptive and unethical "undertones" that would allow a LUTPA claim to stand in addition to the breach of contract claims. *See Tubos de Acero de Mex. SA v. Am. Int'l Inv. Corp,* 292 F.3d 471 (5th Cir. 2002). A review of state court cases involving LUTPA claims reveals that the courts "have been hesitant to impose liability where the evidence reveals merely a normal business relationship. Conversely, where there exists evidence of fraud or specific intent to injure a competitor, the courts have been more willing to embrace the LUTPA." *Omnitech Int'l, Inc. v. Clorox Co.*, 11 F.3d 1316, 1332 (5th Cir. 1994) (internal citations omitted). As the Fifth Circuit has noted, the LUTPA was modeled after the Federal Trade Commission Act, 15 U.S.C. § 45, and the main focus was "to deter injury to competition." *Id.* at 1331.

Previously, the Court denied Defendants' motion to dismiss Plaintiff's LUTPA claim, with instructions for Plaintiff to file an amended complaint in order to plead all necessary and relevant facts. Rec. Doc. 67 at 19. Plaintiff's Second Amended Complaint alleges that "SBT has used its business and economic advantages to the detriment of FABI. These actions are specifically alleged to have been unethical, unscrupulous, oppressive and substantially injurious." Rec. Doc. 68 at 21. Plaintiff's complaint, "by way of example," lists nine actions taken by SBT that Plaintiff contends are "unfair or deceptive." *Id.* These include:

1. SBT's alleged theft and continued withholding of Plaintiff's Work Products, in order to obtain material concessions from Plaintiff;

2. SBT's efforts to restrain Plaintiff's ability to conduct business, were part of an alleged scheme to force Plaintiff to remain a client;

3. SBT's continual repair work on the Work Products was part of an alleged scheme to mislead Plaintiff regarding the true nature of the problems with the Work Products and extract additional concessions from Plaintiff;

4. SBT's alleged withholding of the Work Products was deliberately done in retaliation for Plaintiff's decision to sever the business relationship;

5. SBT's alleged refusal to cooperate in the transition process as Plaintiff attempted to sever the business relationship, causing delays;

6. SBT allegedly threatened to destroy Plaintiff's business by disabling the Work Products prior to the completion of the transition process;

7. SBT allegedly misrepresented to Plaintiff whether requested materials had been provided;

8. SBT allegedly attempted to extract additional concessions from Plaintiff prior to releasing said requested materials; and

9. The materials provided by SBT were incomplete and out-of-date.

*Id.* at 21-22. Defendants again seek dismissal of this claim, arguing that Plaintiff has failed to allege any additional specific facts, and instead has simply added speculation regarding SBT's motives behind the previously alleged actions. Rec. Doc. 69-1 at 6-7.

Although the majority of Plaintiff's LUTPA claim is nearly identical to that proffered in the previous complaint, Plaintiff has added language describing a specific intent on behalf of SBT to harm Plaintiff's business and relationships with its clients. At this stage in the proceedings, and particularly on a motion to dismiss, the Court must accept all well-pleaded facts as true and must draw all reasonable inferences in favor of the plaintiff. *Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 232-33 (5th Cir. 2009). A legally sufficient complaint must contain enough factual matter to raise a reasonable expectation that discovery will reveal evidence of each element of the plaintiff's claim. *Id.* at 255-57. Denying a motion to dismiss does not mean the Court finds that there is a successful LUTPA claim, only that at this stage of the proceedings, Plaintiff has stated enough to survive a 12(b)(6) motion to dismiss.

For these reasons, Defendants Motion to Dismiss is DENIED as to the Louisiana Unfair Trade Practices Act claim.

## IV. CONCLUSION

Considering the foregoing, **IT IS HEREBY ORDERED** that the defendants Smart Business Technology, Inc., Serafin Fuente and Carlos Romero's Motion to Dismiss (Rec. Doc. 41) is **DENIED.**

New Orleans, Louisiana, this 7th day of October 2016.

**KURT D. ENGELHARDT**
**UNITED STATES DISTRICT JUDGE**

24